ALABAMA ASPHALTIC LIMESTONE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91793.   Promulgated February 14, 1940.

*James A. O'Callaghan, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

**328**

OPINION.

HILL: The specific issue raised for decision in this case is whether respondent erred in respect of the basis used in computing the amounts allowed by him as deductions from petitioner's gross income for the taxable year on account of depreciation and depletion. The parties agree, however, that this question turns upon whether or not the transaction detailed in our findings of fact above constituted a reorganization within the meaning of the taxing act. If so, then it is stipulated that the amounts of depreciation and depletion properly allowable are those claimed by petitioner. Such amounts were computed on the cost basis of the property in the hands of the predecessor or old corporation, who, petitioner contends, was its transferor. If there was no reorganization, it is stipulated that the deductions for depreciation and depletion as allowed in the deficiency notice are correct. In the deficiency notice, respondent held "that the basis of * * * depreciation and depletion is the price for which the property was bid in at the receiver's sale", and computed the allowed deductions accordingly. Under respondent's theory the noteholders' committee which bid in the property at the receiver's sale was petitioner's transferor.

In view of the stipulations of the parties there is only one determinative question which we have to decide, namely, whether or not there was a reorganization. The applicable statute in the determination of this question is section 112 (i) (1) of the Revenue Act of 1928.[1]

---

[1] (i) *Definition of reorganization.*—As used in this section and sections 113 and 115—
(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * *

On brief respondent contends that there was no reorganization, but only a purchase of assets of a bankrupt corporation at a trustee's sale by the common, unsecured creditors of the corporation, and that the proper basis for computing depreciation and depletion of the assets in the hands of petitioner is the cost to the purchasing creditors, which was the price paid at the sale for the assets.

Respondent's position, we think, can not be sustained. The facts establish that a reorganization *in reality* was effected within the meaning of the revenue act, as well as within the meaning of the term as commonly understood. There was a complete reorganization of the corporate business, which is essential to make it a reorganization for tax purposes. Cf. *Gregory* v. *Helvering*, 293 U. S. 465. The successor corporation, petitioner herein, acquired all the properties of another corporation, its predecessor, in exchange for all of its capital stock. Also, possibly in addition, it assumed an obligation to repay to the reorganization committee the amount of cash furnished by the committee to pay costs of administration, other expenses, and dividends to the nonassenting creditors. This is one of the transactions described in section 112 (i) (1) (A), *supra*, as constituting a reorganization.

The fact that the reorganization committee paid an undisclosed amount of cash for expenses and dividends to nonassenting creditors, and petitioner's opening balance sheet discloses that it assumed an obligation to repay Iselin & Co. $40,000, may indicate that at least a part of such amount represents a cash consideration so paid for the properties of the old corporation. But if the purchasing corporation did in fact pay some cash, in addition to stock, for the assets of its predecessor, this fact, under the provisions of the statute before quoted, did not prevent the transaction from being a reorganization, if there was a substantial continuity of beneficial ownership in the assets, to which latter point further reference will be made.

Respondent urges that his contention is supported by the fact that the noteholders and other creditors involved herein were neither stockholders, bondholders, preferred creditors, nor secured creditors of the old corporation; that they were only common, unsecured creditors and therefore do not come within the purview of section 112 (b) (3) of the Revenue Act of 1928.[2] On this ground, also, respondent attempts to distinguish our decision in *Frederick L. Leckie*, 37 B. T. A. 252, and the decision of the Circuit Court of Appeals for

---

[2] (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

the Seventh Circuit in *Commissioner* v. *Kitselman*, 89 Fed. (2d) 458, reversing 33 B. T. A. 494; certiorari denied, 302 U. S. 709.

It is argued that the creditors in the instant proceeding did not exchange stock or securities of the old corporation for stock in the new corporation, within the meaning of section 112 (b) (3), and that, hence, there was absent the continuity of interest necessary to reorganization. Whether there was such an exchange is not a question we have to decide here. Such continuity of interest may be established in many ways other than by a state of facts to which 112 (b) (3) is applicable, as will readily appear by reference to the reorganization and nonrecognition provisions of the statute.

Section 112 (b) (3) had direct application to the ultimate question for determination in the *Leckie* and *Kitselman* cases, to wit, whether there was a tax free exchange of securities. But in each of those cases it was also necessary to determine whether there was a corporate reorganization in order to determine whether section 112 (b) (3) applied to an individual taxpayer who, pursuant to the plan of reorganization, exchanged bonds of the old corporation for stock and bonds of the new corporation. To the extent and only to the extent of the court's holding in each of those cases on the question of reorganization was there determined a question like the one presented here. The question of reorganization in those cases was determined under section 112 (i) (1), which is the statutory provision applicable to the question which we have to determine here.

In the *Kitselman* case the continuity of interest in corporate assets necessary to reorganization was based on the fact that the bondholders as prior lien creditors of the old corporation were the only persons who had a beneficial interest in its assets and that they received in exchange for their bonds a part of the capital stock and bonds of the new corporation to which the assets were transferred. The fact that the bondholders were first lien creditors gave them a priority in interest in the assets over all other creditors but it was as mere creditors of an insolvent corporation and not as holders of "securities" that they became the owners of the beneficial interest in the assets to the exclusion of the stockholders and acquired the right to manage the affairs of the corporation. It was this ownership of beneficial interest resulting from their status as creditors of an insolvent corporation that stepped up the bondholders (as mere creditors) to the position "somewhat akin to preferred stockholders." The court in that case said:

Bondholders are ordinarily viewed merely as creditors, but when the assets of the corporation are less than its obligations, the bondholders are in actuality and for all practical purposes pretty much the corporation.

The fact that the bondholders in the *Kitselman* case were secured creditors operated only to exclude the other creditors of the in-

solvent corporation from any beneficial interest which, if possessed, would have raised them also from the status of mere creditors to the owners of beneficial interest in the corporate assets and to a consequent status akin to that of stockholders. The fact that the bonds in the *Kitselman* case were secured did not differentiate them from unsecured bonds as "securities."

In *Commissioner* v. *Tyng*, 106 Fed. (2d) 55, quoted with approval in *Stirn, Inc.* v. *Commissioner*, 107 Fed. (2d) 390, the court said:

> The proper test as to whether bonds come within the meaning of "securities" under section 112 (b) (3) is not whether they are secured or unsecured, but whether they represent a long or short term investment on the part of the transferor.

*Commissioner* v. *Tyng, supra,* was reversed by the Supreme Court in *Helvering* v. *Tyng*, 308 U. S. 527, on the holding that there was a corporate reorganization under section 112 (i) (1), but the interpretation as to what constitutes a "security" under section 112 (b) (3) was not involved in the reversal.

Accordingly, an unsecured "security" satisfies the requirements of section 112 (b) (3) the same as a secured "security" in effectuating the continuity of interest upon the principle of which the non-recognition provision of the section is based. But a holder of an unsecured "security" of a solvent corporation is a mere creditor and is on a parity with any general creditor in subjecting the assets of a debtor corporation to the payment of his claim. He has no status with respect to such assets different from that of any other unsecured creditor. A holder of an unsecured bond of a bankrupt corporation has proportionately the same beneficial interest in the assets of such corporation as any general creditor. This is true regardless of whether or not the bond has the status of a "security" as contemplated in section 112 (b) (3). By reason of the bankruptcy of the debtor corporation, each such creditor is stepped up from the status of mere creditor to that of owner of a beneficial interest in the corporation's assets.

The proposition of whether a creditor has a beneficial interest in the assets of an insolvent corporation is not dependent upon the form in which the debt is evidenced. It may depend on whether other debts are secured by prior liens on the assets involved. When a general creditor is stepped up to the status of ownership of a beneficial interest in the assets of a corporation by reason of its insolvency he has a right therein that is property; he owns something; he has an investment; he has a status with respect to such assets comparable to that of a common stockholder. When that beneficial interest follows the assets into the hands of a transferee corporation there is continuity of beneficial ownership.

The creditors in the instant proceeding represented the old corporation in executing the plan of reorganization just as the court held the creditors did in the *Kitselman* case, *supra*, and in *Commissioner v. Newberry Lumber & Chemical Co.*, 94 Fed. (2d) 447. Therefore, subdivisions (b) (4) and (d) of section 112 of the Revenue Act of 1928 are applicable on the question of nonrecognition of gain or loss.

Respondent further asserts that when the noteholders' committee purchased the assets at the trustee's sale it acquired the property free from all liens and debts, except taxes, and hence cost to the committee, which was the price paid at the sale, is the basis which must be used for depreciation and depletion purposes, citing *Olean Sand & Gravel Corporation*, 24 B. T. A. 324. Finally, respondent cites *Beverly Wall Paper Co.*, 36 B. T. A. 353, as being similar to the instant proceeding on the facts. We are unable to agree with respondent's argument.

The *Beverly* case is clearly distinguishable. The three creditor corporations there referred to were held to be merely purchasers of the assets sold by the receiver. "The fact that they were creditors of the bankrupt corporation had no bearing on that purchase because their claims against the bankrupt constituted no part of the consideration paid." Here the contrary appears. However, our decision in that case was reversed (on another ground) by the Circuit Court of Appeals for the Third Circuit, 98 Fed. (2d) 211, and, in the light of subsequent decisions, requires no further discussion here.

The *Olean* case likewise is not in point. There the creditors of a bankrupt corporation bought in its property at a receiver's sale, free of all liens and claims. So far as shown, it was an unconditional purchase, not subject to a prior reorganization agreement. This situation was not changed by the fact that the creditors subsequently organized a corporation to which the purchased property was transferred in exchange for stock. The circumstances here are materially different. The noteholders' committee did not purchase the bankrupt corporation's property for themselves but as trustee for the benefit of all the assenting noteholders and other assenting creditors, subject to the agreement previously entered into under the reorganization plan.

In the light of the reorganization plan and agreement thereunder the noteholders' committee was in substance merely the instrumentality by which the bankruptcy proceeding was instituted and through which the assets of the old corporation were transferred to the new corporation, in exchange for all of its stock, both voting common and nonvoting preferred. The stock of the new corporation was not issued directly to the old corporation in exchange for the latter's property and by it distributed to the creditors in satisfaction

of its obligation, but this did not prevent the transaction from being a reorganization. The intervention of the bankruptcy action prevented issuance of the stock directly to the old corporation. The stock of the new corporation was issued directly to the assenting noteholders and other creditors instead of to the committee. This was merely an unimportant cutting of corners. The trustee in bankruptcy was the president of the old corporation and became president of its successor, the petitioner, upon the latter's organization. The entire transaction from its inception was directed solely to a single objective, the reorganization of the business of the old corporation. That business was carried on without interruption by the same organization of individuals, constituting the personnel first of the old corporation and then of the new corporation.

The reorganization in the instant proceeding differs in two respects from the circumstances usually attending such form of reorganization, in that, (1) neither the old corporation nor its stockholders, as such, instituted or participated in any manner in the transaction; and (2) the creditors, who assumed charge of the old corporation and brought about its reorganization as the real parties in interest, were common or unsecured creditors. The principle applied by the court in its decision on the facts in *Commissioner* v. *Kitselman*, *supra*, is equally applicable to the facts here. In that case it was held that there was a statutory reorganization. In its discussion of the case the court said:

Although the instant situation is rather novel in the aspect that neither the stockholders nor corporation participated in any way in the plan whereby the mortgage was foreclosed, the new company formed, and the assets transferred to the committee and by it to the new company, we believe a statutory reorganization was effected. The only reason the stockholders did not participate in the plan was that their stock represented no assets and was valueless, and therefore they were without right to speak. *In re 620 Church Street Corporation*, 299 U. S. 24, 27, 57 S. Ct. 88, 81 L. Ed. ——.

\* \* \* \* \* \* \*

It is clear that the bondholders were the moving spirit and were treated as the owners in fact, and it follows that they must be viewed as a class of "stockholders" somewhat akin to preferred stockholders with cumulative dividend rights. Their position was stepped up by reason of what had occurred and the finding that there was no equity over the lien of the mortgage. Where the assets of the corporation fall far below the amount required to pay the bondholders in full, the bondholders in bankruptcy reorganization supersede the stockholders. They acquire the stockholders' rights to manage the corporate affairs.

Under the facts in the instant case it conclusively appears that the creditors of the old corporation were the only persons having a beneficial interest in its assets. Accordingly, they were stepped up to the status comparable to that of common stockholders and acquired the stockholders' rights to manage the corporate affairs and did so act

through the noteholders' committee in the formulation and execution of the plan of reorganization.

We followed the *Kitselman* decision in *Frederick L. Leckie, supra*, and *Marlborough House, Inc.*, 40 B. T. A. 882. These cases involved mortgage bondholders or secured creditors. However, we think the doctrine announced is equally applicable under the circumstances of the instant proceeding. The fact that the indebtedness due the creditors here was unsecured and evidenced merely by notes and open accounts rather than bonds is, in our opinion, wholly immaterial. The value of the corporation's assets was far less than the amount of its obligations; it was a bankrupt; its stockholders had no interest in the assets; there were no bondholders or preferred creditors, and the unsecured creditors were the only persons having any substantial interest in the assets. Such interest was continued upon the transfer of the assets to petitioner, since the assenting creditors received all of petitioner's capital stock in satisfaction of their claims against the old corporation. As stockholders of the new corporation their interest was definite and material and represented the entire value of the transferred assets. Thus, the rule of continuity of interest in the transferee is fully met. Cf. *G. & K. Manufacturing Co.* v. *Helvering*, 296 U. S. 389, and *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462.

We think it is unimportant that the transaction in this case was consummated by means of a bankruptcy proceeding. That fact in any event bears only upon the question of whether or not there was a sufficient continuity of interest in the transferee. The fact that the assets of the old corporation were sold under a court proceeding does not in and of itself prevent the transaction from being a reorganization. As we pointed out in *C. H. Mead Coal Co.*, 28 B. T. A. 599, 609, "the judicial sale is the usual incident of reorganizations." In *De Blois* v. *Commissioner*, 36 Fed. (2d) 11, the Circuit Court of Appeals for the First Circuit expressed the opinion that Congress did not intend to distinguish between voluntary and involuntary reorganizations, and "whether court proceedings of any kind are found to be a necessary or expedient means of effecting a reorganization, are, for present purposes, a distinction without a difference." This view was approved by the Circuit Court of Appeals for the Sixth Circuit in *Commissioner* v. *Newberry Lumber & Chemical Co.*, *supra*, which reversed 33 B. T. A. 150.

The facts in the *Newberry* case, in many material respects, are similar to the instant proceeding. There, the old corporation, being unable to meet the obligations of its bonds, was placed in receivership in the United States District Court for the Western District of Michigan in March 1926. In May 1929 the court ordered a sale

of the remaining properties by a special master. During the receivership a bondholders' protective committee, representing 93 percent of the outstanding bonds, was formed and formulated plans for a reorganization of the company. At the master's sale both the mortgaged and unmortgaged assets of the old company were bid in by the committee. The mortgaged assets were bid in for $400,000 and paid for by bonds held by the committee, plus sufficient cash to pay expenses and nondepositing bondholders. The unmortgaged assets were bid in for $140,000 and paid for in cash. The property was then transferred by the committee to a newly formed corporation in exchange for all of its stocks and bonds, which were distributed pro rata among the bondholders of the old corporation represented by the committee.

Our holding that the transaction did not constitute a reorganization was based upon our conception of a lack of essential continuity of interest, but, as the court pointed out, the bondholders of the old corporation, who owned the beneficial interest in the assets, became the bondholders and stockholders in the transferee or new corporation. The question in that case, as in the present case, was the proper basis for depletion and depreciation of the assets after transfer to the new corporation, and the court held that "It was * * * error for the Board to establish the capital base on cost price paid at the decretal sale."

We need not inquire here whether a bankruptcy sale may not in any circumstance affect the continuity of beneficial interest in the corporate assets. Certainly it could not and did not do so under the facts of this proceeding. The cancellation of the unsatisfied portions of the noteholders' claims by reason of the bankruptcy sale is not determinative of the question presented. Coincident with such cancellation, the noteholders became the beneficial owners of the corporate assets in exchange for their claims by reason of the acquisition by the noteholders' committee. The fact remains clearly demonstrated that prior to such sale the creditors of the old corporation, including the noteholders, were the only persons having any beneficial interest in the assets. *Commissioner* v. *Kitselman, supra.* After the sale and transfer to the new corporation, practically all of the same persons, including all but two of the former noteholders, were the sole stockholders of the new corporation and hence continued to be the owners of the beneficial interest in the assets. /

Thus, to a very substantial extent, there was an unbroken and absolute continuity of interest in the assets beginning prior to and extending beyond completion of the transaction here involved. Irrespective of the precise effect of the bankruptcy sale, the beneficial interest in the assets was not vested at any time during the period

of reorganization in any person other than the creditors of the old corporation.

Following the *Kitselman* and other decisions above cited, we hold that the transaction in the case at bar constituted a reorganization within section 112 (i) (1), *supra.*

It follows that petitioner is entitled to use the asset basis of the old corporation in computing the deductions allowable from gross income for the taxable year on account of depreciation and depletion. The parties have stipulated that in the event of such holding, the amounts so allowable are $21,630.63 and $6,019.58, respectively. The parties have further stipulated that petitioner is entitled to a deduction from gross income for the taxable year in the amount of $1,200, representing debts ascertained to be worthless and charged off during that year. Both stipulations will be given effect in the recomputation' on final settlement.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Van Fossan and Leech dissent.

---

Murdock, dissenting: The only question considered .in the prevailing opinion is whether or not there was a reorganization. The opinion holds that there was a reorganization and then allows a deduction for depreciation computed upon the same basis as the predecessor corporation was entitled to use. The Commissioner allowed a deduction for depreciation based upon the cost of the properties to the petitioner and his determination can not be reversed unless, first, there was a reorganization and, second, no gain or loss to the predecessor corporation 'was recognized in the transaction whereby the assets passed out of its hands. That is, even if there was a statutory reorganization, the new corporation can not use the same basis which the old corporation was entitled to use unless there is some provision of section 113 which gives the new corporation the right to use that old basis. The prevailing opinion does not attempt to point out any such provision of section 113 but relies upon the stipulation of the parties. The parties, however, can not stipulate a matter of law. Here, all of the facts are revealed and a decision must be made as to whether the new corporation has a right to use the old basis.

The special provisions are contained in section 113 (b). Most of those provisions need no consideration. Paragraph 6 does not apply because this new corporation acquired the property by the issuance of its stock. Paragraph 8 has no application because it relates only to nontaxable exchanges under section 112 (b) (5) and there is no contention that there was a nontaxable exchange within section 112 (b) (5). Paragraph 7 is the only one which requires any particu-

lar consideration. It provides that the basis in the hands of the transferee shall be the same as it was in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon the transfer, provided that immediately after the transfer an interest or control in such property of 80 percentum or more remained in the same persons or any of them. If the reasoning of the prevailing opinion, that the creditors were in control of the old corporation prior to the transfer, is sound then the control required by this provision would exist, but if the stockholders of the old corporation were in control at that time, then this provision of the statute would not apply because the control did not remain in the same persons or any of them.

Even though the control existed, still, it is necessary to determine whether or not and to what extent the loss of the old corporation upon the assets was recognized for income tax purposes. This depends upon section 112, which provides in general that the entire gain or loss upon the disposition of property is recognized and then makes certain exceptions. None of the exceptions applies to deny the old corporation its right to deduct its entire loss upon the disposition of its assets. Section 112 (b) (3), frequently mentioned in the majority opinion, has nothing whatever to do with the case. The only exception relating to corporations is that contained in section 112 (b) (4). It is that no gain or loss shall be recognized if a corporation, a party to a reorganization, exchanges property in pursuance of a plan of reorganization solely for stock or securities in another corporation a party to the reorganization. Obviously that provision does not apply here because the old corporation did not exchange its property solely or partially for stock or securities in the new corporation. Its property was taken from it through a bankruptcy proceeding. Consequently, the entire loss of the old corporation upon the disposition of its properties was recognized. Finally, even if the new corporation were entitled to use the same basis as the old corporation, nevertheless that basis would have to be reduced by the loss of the old corporation upon the disposition of the property. The basis thus computed would be less than the basis used by the Commissioner in determining the deficiency. I am unable to find in the statute any justification for allowing this petitioner to use as its basis for depletion the same basis as the old corporation was entitled to use or any greater basis than the cost of the assets to it.

The foregoing discussion makes unnecessary a decision of whether or not there was a reorganization. However, I have serious doubts whether, in the light of the recent decision of the Supreme Court in *Le Tulle* v. *Scofield*, 308 U. S. 415, there was a reorganization within the following definition contained in section 112 (i)

(1) (A): "A merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)." A transaction, to constitute a reorganization under this provision, must resemble a merger or consolidation. *Pinellas Ice & Cold Storage Co.*, 287 U. S. 462; *Bus & Transport Securities Co.* v. *Helvering*, 296 U. S. 391. The prevailing opinion fails to point out any resemblance. Only the stockholders of the old corporation had a proprietary interest or stake in the old corporation as a corporation. The creditors had no such interest. *Le Tulle* v. *Scofield, supra.* The creditors had to look to the assets alone for satisfaction of the debts due them. The prevailing opinion, relying upon the *Kitselman* case, reasons that those creditors, by reason of the bankruptcy, acquired "a status with respect to such assets comparable to that of a common stockholder" of the old corporation; they were akin to stockholders of the old corporation; they became stockholders of the new corporation; therefore, a continuing interest essential to a statutory reorganization existed in them. The *Kitselman* case was decided prior to the *Le Tulle* case. The Supreme Court, considering the same definition of a reorganization, pointed out in *Le Tulle* v. *Scofield, supra,* that the statute is not satisfied unless the transferor retains a substantial stake in the enterprise, and where the transferor receives only cash and bonds of the transferee, no proprietary interest in the enterprise is retained because all bondholders are mere creditors, and creditors have no proprietary interest or stake in a corporation. If bonds of the transferee do not give to the holders any proprietary interest in the enterprise or proprietary stake within the purview of the statute, it is difficult to see how unsecured creditors of the transferor might be considered as having any proprietary interest or stake in the enterprise within the purview of the statute so that the essential continuing interest might be traced through them.

STERNHAGEN and OPPER agree with this dissent.

---

DISNEY, dissenting: I agree with all that Mr. Murdock has said in his dissent. In addition, even if we assume reorganization and the applicability of section 112 (b) (4), in spite of the fact that the section applies only where the exchange is solely for stock or securities, and such was not the case here, we would still be under the necessity of considering the modification of section 112 (b) (4) by section 112 (d). Under section 112 (d) it is necessary to inquire whether the corporation receiving "other property or money" distributes it in pursuance of the plan of reorganization. If such distribution does not take place, gain is recognized not in excess of the money and value of other property received. This whole question the majority opinion does not consider, though money was in fact received, a dividend paid

only to nonassenting creditors, administration costs and receiver's certificate and preferred paid claims. In addition, there was an obligation to pay A. Iselin & Co. $40,000, apparently on behalf of the old corporation. I think we should have considered the application of *United States* v. *Hendler,* 303 U. S. 564, to these obligations and therefore should have considered adjustment of base under section 112 (d), and that without examination of such questions the case is not completely disposed of, even on the theory that there was reorganization, with which I disagree. I therefore dissent.

MELLOTT agrees with the views expressed in both of the above dissents.