## COMMISSIONER OF INTERNAL REVENUE v. PALM SPRINGS HOLDING CORPORATION.

## PALM SPRINGS HOLDING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9661.

Circuit Court of Appeals, Ninth Circuit.

May 14, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Maurice J. Mahoney, and L. W. Post, Sp. Assts. to the Atty. Gen., for Commissioner.

Frank Mergenthaler, of Los Angeles, Cal., for taxpayer.

Before MATHEWS and STEPHENS, Circuit Judges, and HOLLZER, District Judge.

MATHEWS, Circuit Judge.

These are petitions to review a decision of the Board of Tax Appeals redetermining claimed deficiencies in respect of income and excess profits taxes of Palm Springs Holding Corporation (hereafter called the taxpayer) for the taxable year ended May 31, 1936.

In May, 1932, the taxpayer acquired bonds of Palm Springs Hotel Company, a corporation (hereafter called the Hotel Company), of the face value of $292,000. The bonds were secured (1) by a mortgage on real property owned by the Hotel Company and leased by it to Palm Springs Hotel Operating Company,[1] a corporation (hereafter called the Operating Company), and (2) by a pledge of the lease and a chattel mortgage securing performance of the Operating Company's obligations thereunder, the chattel mortgage being on furniture and fixtures owned by the Operating Company. Both the realty mortgage and the pledge were to California Trust Company, as trustee.

On July 15, 1932, the bonds being in default, the mortgaged realty and the pledged lease and chattel mortgage were sold by the trustee and purchased by the taxpayer for a bid price of $61,800, of which $18,767.-96 was paid in cash, the balance ($43,032.-04) by the taxpayer's surrendering its Hotel Company bonds to the trustee. Thereafter the taxpayer foreclosed the chattel mortgage and, at the foreclosure sale, August 2, 1932, purchased the mortgaged furniture and fixtures for a bid price of $20,179.25.

All the property mentioned—the real property purchased on July 15, 1932, and the personal property (furniture and fixtures)

---

[1] Later known as El Mirador Hotel Operating Company.

purchased on August 2, 1932—was used by the taxpayer in its trade or business in the taxable year ended May 31, 1936. Hence the taxpayer, in computing its net income for the taxable year, was entitled to an allowance for depreciation of the property. Revenue Act of 1934,[2] § 23(*l*), 26 U.S.C.A. Int.Rev.Acts, page 673.

This the Commissioner of Internal Revenue conceded, but he and the taxpayer did not agree as to the basis on which such depreciation should be determined. The taxpayer contended that the basis of the real property was the same as it would have been in the hands of the Hotel Company, with adjustments as provided in § 113(b) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 700, and that the basis of the personal property was the same as it would have been in the hands of the Operating Company, with similar adjustments. The Commissioner contended that the basis of all the property was the cost thereof to the taxpayer, with adjustments as provided in § 113(b). With respect to the real property, the Board agreed with the taxpayer. With respect to the personal property, it agreed with the Commissioner. Both parties have petitioned for review.

Section 114(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 701, provides that, with inapplicable exceptions, the basis on which depreciation is to be allowed in respect of any property shall be "the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property." Section 113(b) provides that the adjusted basis for determining such gain shall be the basis determined under § 113(a), with specified adjustments. Section 113(a) provides that, with specified exceptions, "the basis of property shall be the cost of such property." Of the fourteen exceptions specified in § 113(a), the only one which could possibly be regarded as applicable here is the one specified in § 113(a) (12), which provides:

"If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932,[3] was prescribed by section 113

(a) (6), (7), or (9) of such Act, then for the purposes of this Act the basis shall be the same as the basis therein prescibed in the Revenue Act of 1932."

The property here involved was acquired after February 28, 1913, in a taxable year beginning prior to January 1, 1934. The taxpayer, however, does not contend that the basis of the property was that described in § 113(a) (6) or § 113(a) (9) of the Revenue Act of 1932. Its contention is that the basis of the property was that prescribed in § 113(a) (7) of the Revenue Act of 1934,[4] which is identical with § 113(a) (7) of the Revenue Act of 1932, which provides: "If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *"

That the property here involved was acquired after December 31, 1917, by a corporation (the taxpayer) is conceded. Questions to be decided are (1) whether the property was acquired in connection with a reorganization and (2) whether immediately after the transfer an interest or control in the property of 50 per centum or more remained in the same persons or any of them.

Section 112(i) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 513, defines the term "reorganization" as "(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred,

---

[2] Act of May 10, 1934, c. 277, 48 Stat. 680–772.

[3] Act of June 6, 1932, c. 209, 47 Stat. 169–289.

[4] In support of its contention that the basis of the property was that prescribed in § 113(a)(7), the taxpayer cites both §

113(a)(6) and § 113(a)(7) of the Revenue Act of 1934, being apparently under the delusion that both prescribe the same basis. Actually, they prescribe different bases. Thus, if applicable, § 113(a)(6), instead of supporting the taxpayer's contention, would require its rejection.

or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected." [5]

The taxpayer does not contend that any of the property here involved was acquired in connection with any transaction mentioned in subdivisions (B), (C) or (D) of § 112(i). Its contention is that the property was acquired in connection with a merger or consolidation mentioned in subdivision (A), namely, the acquisition by one corporation (the taxpayer) of substantially all the properties of two other corporations (the Hotel Company and the Operating Company). Thus, it is contended, the property was acquired in connection with a reorganization within the meaning of § 112 (i).

The real property and other property acquired by the taxpayer at the trustee's sale on July 15, 1932, constituted all the property of the Hotel Company. The personal property acquired by the taxpayer at the foreclosure sale on August 2, 1932, constituted all the property of the Operating Company. It does not, however, necessarily follow that these acquisitions or either of them constituted a merger or consolidation—and hence a reorganization—within the meaning of § 112(i).

■■ It should here be recalled that the taxpayer paid for the real property partly in money, partly in bonds of the Hotel Company, and paid for the personal property in money. Neither the Hotel Company nor the Operating Company got anything for its property except the satisfaction or partial satisfaction of certain indebtedness. Neither received any stock or bonds of the taxpayer. Neither retained any stake or proprietary interest in the corporate enterprise in which theretofore it had engaged. Hence, the transactions whereby the taxpayer acquired the property were mere sales or exchanges. Neither amounted to a reorganization. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 468-470, 53 S.Ct. 257, 77 L.Ed. 428; LeTulle v. Scofield, 308 U.S. 415, 419-421, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v. Tyng, 308 U.S. 527, 60 S.Ct. 378, 84 L.Ed. 445; Commissioner v. Bondholders Committee, 9 Cir., 118 F.2d 511, decided March 8, 1941.

The contrary view derives no support from Commissioner v. Kitselman, 7 Cir., 89 F.2d 458, or from Newberry Lumber & Chemical Co. v. Commissioner, 6 Cir., 94 F. 2d 447. For the Kitselman and Newberry cases, so far as relevant here, were in effect overruled by LeTulle v. Scofield and Helvering v. Tyng, supra. In Commissioner v. Southwest Consolidated Corp., 5 Cir., 119 F.2d 561, cited by the taxpayer, stock of the transferee was exchanged for stock, as well as bonds, of the transferor, thus permitting the transferor's stockholders to retain a proprietary interest in the corporate enterprise. In the case at bar, the transferors' stockholders got nothing.

We reject also the taxpayer's contention that immediately after the above mentioned transfers an interest or control in the transferred property of 50 per centum or more remained in the same person as before, namely, the taxpayer. For prior to the transfers the taxpayer had no interest or control in any of the property, but was merely a creditor of the owners—the Hotel Company and the Operating Company. And this is true despite the fact that the Hotel Company's debt was evidenced by bonds.

We regard as immaterial the fact, much stressed by the taxpayer, that at the time of the transfers each company had only one stockholder and only ten shares of stock outstanding. For whether a corporation has one or many stockholders, or ten or ten thousand shares outstanding, the rule is that its stockholders, not its creditors, control and, in effect, own the corporation. The rule is applicable here.

With respect to the personal property involved, the Board held, and properly so, that the basis was not that prescribed in § 113 (a) (7), but was the cost of such property to the taxpayer, with adjustments as provided in § 113(b) of the Revenue Act of 1934. That should have been its holding with respect to all the property, real and personal.

Decision reversed and case remanded for further proceedings in conformity with this opinion.

---

[5] With later definitions—found in § 112(g) of the Revenue Acts of 1934, 1936 and 1938, 26 U.S.C.A. Int.Rev.Acts, pages 695, 858, 1047, and § 112(g) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev Code, § 112(g)—we are not here concerned.