## PALM SPRINGS HOLDING CORPORATION *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 503. Argued January 15, 1942.—Decided February 2, 1942.

*Mr. John E. Hughes,* with whom *Mr. Thomas R. Dempsey* was on the brief, for petitioner.

*Assistant Attorney General Clark,* with whom *Solicitor General Fahy,* and *Messrs. J. Louis Monarch* and *Samuel H. Levy* were on the brief, for respondent.

*Mr. Thomas J. Herbert,* Attorney General of Ohio, filed a brief on behalf of that State, as *amicus curiae,* in support of petitioner.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case is a companion case to *Helvering* v. *Alabama Asphaltic Limestone Co., ante,* p. 179. This, too, was an insolvency reorganization, though a different procedure was employed to consummate it. The old corporation had outstanding about $300,000 face amount of first mortgage bonds, secured by a lien on its realty. The property, which was an hotel, was leased to an operating company. In 1931, as a result of transactions not relevant here, one Pinney became the sole stockholder of the old corporation and of the operating company. The furniture and fixtures in the hotel were owned by the operating company. They were covered by a chattel mortgage which, together with the lease on the hotel, were assigned and pledged as part of the security for the bond issue. In 1931, both companies were in financial difficulties and insolvent, at least in the equity sense. A bondholders' committee was formed, which received deposits of more than half of the face amount of the bonds. Petitioner was formed in 1932. Pursuant to the plan of reorganization, six shares of petitioner's preferred stock and four shares of its common stock were issued to assenting bondholders for each $1000 bond. In addition, all of petitioner's remaining common stock was issued to one Lacoe, in return for his agreement to pay the costs of incorporating petitioner, up to $1000, and for his agreement to lend money to petitioner. Before the actual issuance of

any of the shares, Lacoe agreed to transfer 1,000 shares of the common stock to Pinney, the sole stockholder of the two companies, for his services in the reorganization and as an inducement to him to continue as manager of the hotel. None of the stock of petitioner, however, was issued to any stockholder or former stockholder of either of the companies for any rights any of them had as stockholders. In May, 1932, the indenture trustee declared the principal of the bonds due and payable. Pursuant to the terms of the indenture, the trustee sold all of the properties of the old corporation, including the lease and chattel mortgage, to petitioner, the highest bidder. The bid price was $61,800. It was satisfied by the payment of about $18,700 in cash and by the delivery to the trustee of bonds of a face amount of $292,000 for the balance. Foreclosure proceedings against the old corporation and the operating company were then instituted. At the foreclosure sale, the furniture and fixtures, comprising all of the property of the operating company, were bought in by petitioner.

The Commissioner, in determining a deficiency in petitioner's income and excess profits tax for the fiscal year ended May 31, 1936, disallowed depreciation deductions on both the realty and personal property on the basis of cost to the old corporation and operating company.[1]

---

[1] Sec. 113 (a) (7) of the 1932 Act (47 Stat. 169, 198) provides in part:

"(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

.        .        .        .        .

"(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount

He used as the basis the cost of the assets to petitioner plus the cost of additions. The Board of Tax Appeals sustained the Commissioner's determination with respect to the personal property but rejected it with respect to the realty. The Circuit Court of Appeals sustained the Commissioner on both points. 119 F. 2d 846.

Though the petition for certiorari raised the question, petitioner now concedes that the acquisition of the furniture and fixtures from the operating company was not a "reorganization" within the meaning of § 112 (i) (1) (A) of the Revenue Act of 1932. So we do not reach that issue. As respects the assets acquired from the old corporation, we think there was a "reorganization" within the meaning of § 112 (i) (1) (A) of the 1932 Act. That provision is the same in the 1932 Act as in the 1928 Act, which was involved in *Helvering* v. *Alabama Asphaltic Limestone Co., supra.* That case is determinative of this controversy. The transaction fits the literal language of the statute. The new corporation acquired the assets directly at the trustee's and the foreclosure sales. The legal procedure employed by the creditors is not material. The critical facts are that the old corporation was insolvent and that its creditors took steps to obtain effective com-

---

of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

That provision is applicable here. See, § 114 (a), § 113 (b), § 113 (a) (12) of the Revenue Act of 1934, 48 Stat. 680. The property here involved was acquired after February 28, 1913, in a taxable year prior to January 1, 1934, as required by § 113 (a) (12). Respondent argues that this transaction was not a "reorganization" within the meaning of § 113 (a) (7). And he points out that "control" was not in the participating creditors since the majority of the new common stock had been distributed, for a consideration other than an exchange of bonds, to Lacoe and Pinney. But he does not contend that, assuming there was a "reorganization," an "interest" in the property of 50 per cent or more did not remain in the same persons (the bondholders) immediately after the transfer.

mand over its property. For the reasons stated in *Helvering* v. *Alabama Asphaltic Limestone Co., supra,* the creditors at that time acquired the equivalent of the proprietary interest of the old equity owner. Accordingly, the continuity of interest test is satisfied.

*Reversed.*

MR. JUSTICE ROBERTS did not participate in the consideration or decision of this case.