Stormfeltz-Loveley Company Trust, Detroit Trust Company, Trustee for Owners of Beneficial Interests v. Commissioner.
Stormfeltz-Loveley Co. Trust v. Commissioner
Docket No. 110662.
United States Tax Court
1943 Tax Ct. Memo LEXIS 282; 2 T.C.M. (CCH) 183; T.C.M. (RIA) 43251; May 27, 1943
*282 1. Held, petitioner is a trust operating an office building until ultimate liquidation and is taxable as provided by sections 161 and 162, Revenue Act of 1938, and the same sections of the Internal Revenue Code, and is not a mere agency for former bondholders for whose benefit it purchased certain property at foreclosure sale in 1936, as contended by the taxpayer; held, further, the income of the trust was not paid or credited to the holders of the beneficial certificates of the trust in either of the taxable years and petitioner is not entitled to a credit under the provisions of section 162 (c); held, further, section 167, Revenue Act of 1938, and of the Internal Revenue Code, is not applicable to the facts of the instant case. 2. The fair market value of depreciable property acquired at foreclosure sale by a mortgagee constitutes the basis for depreciation allowances after date of acquisition rather than the bid-in price, where the evidence shows clearly that such fair market value is substantially greater than the bid-in price. Palm Springs Holding Corporation v. Commissioner, 315 U.S. 185Held, the fair market value of the *283 building involved in the instant case was substantially greater than the bid-in price and such fair market value is determined for the purpose of fixing taxpayer's base for depreciation to be used in each of the taxable years. C. Frederic Stanton, Esq., 5-214 General Motors Bldg., Detroit, Mich., for the petitioner. Paul A. Sebastian, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax for the years 1938 and 1939 as follows: $6,661.30 for 1938, and $2,451.09 for 1939. The deficiency for 1938 is due to three adjustments which the Commissioner has made in the return filed by petitioner for that year on form 1041, as follows: Unallowable Deductions and
Additional Income: (a) Rental income
$ 9,298.27
(b) Taxes
32,418.90
Total
41,717.17
Nontaxable Income and
Additional Deductions: (c) Loss Distribution
1,826.81
Net income as adjusted
$39,890.36
The Commissioner explained the foregoing adjustments in his deficiency notice as follows: (a) Rental income is increased by the disallowance of excessive building depreciation in amount of $9,298.27 under Section 23 (1), Revenue *284 Act of 1938. The basis herein of the Boulevard Building is the bid-in-price, including foreclosure costs, plus back taxes, a total of $318,345.42 of which $127,338.17 is allocated to land and $191,007.25 is allocated to building. * * * (b) Taxes of prior years in amount of $32,418.90, which constitute part of the cost bases of the Boulevard Building property, are not deductible under section 23 (c) of the Revenue Act of 1938. (c) The income tax return as filed discloses an operating loss of $1,826.81 which amount is shown as distributable to the owners of certificates of beneficial interest. Since the adjusted net income herein is considered entirely taxable to the fiduciary the negative deduction of $1,826.81 is reversed. Under the trust indenture no part of the net income was required to be distributed currently to beneficiaries as contemplated by section 162 (b), Revenue Act of 1938. The deficiency for 1939 is due to two adjustments made by the Commissioner in the return filed by petitioner for that year on form 1041 as follows: Unallowable Deductions and
Additional Income: (a) Rental income
$ 9,505.43
(b) Distribution to benefi-
ciaries
12,647.40
Net income as adjusted
$22,152.83
*285 The foregoing adjustments were explained by the Commissioner in his deficiency notice as follows: (a) Excessive building depreciation in amount of $9,505.43 is disallowed under section 23 (1) of the Internal Revenue Code. See item (a) for the year 1938 * * * (b) Net income of $12,647.40 reported from operations was deducted as distributable to beneficiaries, the owners of certificates of beneficial interest. Under the provisions of the trust indenture no part of the net income was currently to be distributed by the fiduciary to the beneficiaries, as contemplated by section 162 (b), Internal Revenue Code. The petition contains assignments of error which contest the correctness of the foregoing adjustments and petitioner in its brief states the issues to be as follows: (1) Where title to property held by the Detroit Trust Company as Trustee under Power of Attorney had for its primary purpose the sale of the property, the relationship between the trustee company and bondholders is principal and agent rather than trustee and beneficiary. (2) If the Board [Court] finds that a true trust was created then the beneficial owners of the property, i.e., the former bondholders, were the *286 grantors thereof, and the income received by the trustee, having been used to pay back taxes and for the purpose of making improvements, all of which inured to the benefit of the former bondholders, is therefore taxable to them under the provisions of section 167 Revenue Act of 1938, and the Regulations promulgated thereunder. (3) The fair market value of the Boulevard Building as of the date of acquisition on November 26, 1936, was not less then $570,000.00, and not greater than $620,000.00, of which not less then $380,000.00, nor more then $457,500.00 should be allocated to the building, and not less then $162,000.00, and not more then $190,000.00 should be allocated to the land. Findings of Fact The petitioner is a trust with offices at 201 West Fort Street, Detroit, Michigan. For the calendar years 1938 and 1939, petitioner executed fiduciary income tax returns on form 1041 and filed them with the Collector of Internal Revenue for the District of Michigan at Detroit, Michigan. On November 1, 1926, the Stormfeltz-Loveley Company, a Michigan corporation, was the owner of improved property situated at the northeast corner of Woodward Avenue and Grand Boulevard in the City of *287 Detroit, Michigan, and hereinafter referred to as the Boulevard Building. On November 1, 1926, the Stormfeltz-Loveley Company borrowed $1,000,000 from the Detroit Trust Company. On that date, the Stormfeltz-Loveley Company executed and delivered to The Detroit Trust Company as mortgage trustee a trust mortgage on certain property to secure a bond issue in the principal amount of $1,000,000. The bonds issued on the said mortgage were issued to numerous persons and were to mature serially and to bear interest at the rate of five per cent per annum, payable semiannually on May 1st and November 1st of each year. The mortgage given was duly recorded at the office of the Register of Deeds for Wayne County. The trust mortgage became in default with respect to interest payments due November 1, 1930 and thereupon the trustee under the mortgage declared the entire amount of principal and interest to be payable. On January 3, 1931, a bill of complaint was filed in the Circuit Court for the County of Wayne in Chancery asking that the mortgage be foreclosed and the property sold to satisfy the above mentioned bonded indebtedness. Thereupon, the Court ordered the sale of the property to satisfy *288 the indebtedness. A sale was held on May 25, 1936, pursuant to the Court order and The Detroit Trust Company, Trustee, acting under authority of and for the bondholders, bid the property in for a bid price of $207,296.70. There was at that time a lien on the property for back taxes of $111,048.92. The purchase price was paid in mortgage bonds. On May 25, 1936, the property was duly conveyed to the Detroit Trust Company, as trustee, under the mortgage for the benefit of the bondholders by a Circuit Court Commissioner's deed bearing the said date and duly recorded in the office of the Register of Deeds for Wayne County. The mortgagor's equity of redemption expired on November 25, 1936, and on that date title to the property became absolute in the petitioner as trustee for the former bondholders. At the time of the foreclosure sale there was outstanding $799,000, principal amount of bonds, plus interest due thereon. On December 1, 1938, the Detroit Trust Company executed a formal declaration of trust, and all moneys collected from November 25, 1936, and subsequent to December 1, 1938, were collected by the petitioner in its capacity as trustee according to the provisions of said declaration *289 of trust. The declaration of trust is in evidence herein and is incorporated as a part of these findings by reference. The Detroit Trust Company operated the Boulevard Building in the manner and with the same relation to the bondholders during the period November 25, 1936, to November 30, 1938, as the date after the declaration of the formal trust on December 1, 1938. The Detroit Trust Company on May 25, 1936, assumed the payment of the delinquent taxes in the amount of $111,048.92, making a total consideration for the property in the amount of $318,345.62. Of the total consideration for the property sixty per cent or $191,007.25 was allocated by the Commissioner as representing the bid-in price of the building, and the balance of forty per cent or $127,338.17 as representing the bid-in price of the land. There seems to be a discrepancy of 20 cents in this allocation but no point is made of this. No part of the income of the trust for the year 1938 or 1939 was paid or credited to the beneficiaries. The fiduciary income tax returns for 1938 and 1939 filed on form 1041 show the net loss and net income respectively for those years allocated to the individual beneficiaries. The petitioner *290 during the calendar years 1938 and 1939 used the income derived from the operation of the Boulevard Building after the deduction of necessary expenses of operation to discharge taxes which had accrued prior to the date of the acquisition of said property by The Detroit Trust Company and to make improvements and other capital expenditures. The Boulevard Building is a building located on the northeast corner of Woodward Avenue, the main thoroughfare of the City of Detroit, and the Boulevard. It is located on the edge of a good shopping center, known as the Milwaukee Woodward Boulevard Center. Here many of the leading chain store owners have had stores for years. It is a block away from the General Motors Building, the Fisher Building, the New Center Building the Stephenson Building and other similar buildings. It is well serviced by transportation, there being a street car service on Woodward Avenue, a bus service on East and West Grand Boulevard, a street car service west on Milwaukee and east on Baltimore, and there are also other bus lines in the vicinity. The building was originally built by the Ford Motor Company in 1912, as a sales and service station, the first part of it *291 being three stories high and 100 feet long and 97 1/2 feet wide, of very heavy construction. In 1914, the building was enlarged to a total length of 320 feet, and was increased to eight stories in height. It is a heavy duty building built for industrial purposes with a floor capacity of 250 pounds per square foot. It has a white exterior. In 1920, the building was sold to the Stormfeltz-Loveley Company for a million dollars, which in turn leased it to the Fisher Body Company for a period of five years. In 1925, the building was converted by the Stormfeltz-Loveley Company for office building use at a cost of approximately $580,000. Improvements were made throughout the period of operation. The present dimensions of the building are 97 1/2 feet by 320 feet, and eight stories high. The building is in good physical condition. At the present time it is occupied by a variety of commercial tenants, stores being on the ground floor, offices on the upper floors. It has good elevator service including six passenger, a large freight elevator, a freight hoist from the basement to the first floor, and an ash hoist. The heating system consists of three special boilers, two of which are equipped *292 with stokers. The floors were of terrazzo in the halls, marble floors on the first floors, marble wainscoting in the front of the building, and none of the floors in the building were constructed of wood. There is a total of 188,777 square feet of floor space in the building. The average rental rate in 1936 for the then rentable floor space was a $1.00 for store space and a $1.05 for office space. The present average rental rate is in excess of $1.18 per square foot including all rental area. The actual expense of operating the building in 1936 was $.53 per square foot and the present expense is $.66 per square foot. The building was occupied in 1936 to the extent of 80 per cent of the then rentable floor space. In 1936, the 5th, 6th and 8th floors had not been improved, but were improved in the year 1941. The building is at the present time 97 to 98 per cent occupied. The net income, or losses as the case may be, from the operation of the building for the years 1933 to 1941, inclusive, are as follows: Loss
1933
$24,635.42
1934
15,317.09
1935
6,854.79
Net Income
1936
$ 6,234.88
1937
18,045.52
1938
24,543.49
1939
38,998.52
1940
51,286.93
1941
54,845.01
*293 The losses and net income shown in the table above do not reflect deductions for depreciation and Federal income taxes. The assessed valuation of the building for the years 1933 to 1941, inclusive: 1933
$1,176,000.00
1934
1,176,000.00
1935
1,176,000.00
1936
1,097,400.00
1937
985,000.00
1938
842,820.00
1939
734,750.00
1940
559,360.00
1941
559,360.00
Real estate taxes imposed against the land and building for the years 1933 to 1941, inclusive, were: 1933
$32,000.00
1934
32,000.00
1935
32,806.00
1936
31,813.00
1937
29,694.00
1938
27,567.00
1939
23,826.00
1940
18,606.09
1941
18,325.25
The fair market value of the land and building at the time it was acquired at foreclosure sale in 1936 by Detroit Trust Company for and in behalf of the bondholders was $570,000. A proper allocation of this valuation as between land and building is $190,000 as the fair market value of the land and $380,000 as the fair market value of the building. Opinion BLACK, Judge: The issues have already been stated and it will be unnecessary to restate them at this juncture. We will first take up and decide petitioner's issues 1 and 2 as stated in its brief and quoted above. *294 The question presented by issue 1 is whether the respondent erred in determining that during the years 1938 and 1939 the petitioner was a liquidating trust subject to tax as provided by sections 161 and 162, Revenue Act of 1938, and the same sections of the Internal Revenue Code applicable to the year 1939, or was, as contended by the petitioner, a mere agent for the bondholders and not taxable as a separate entity at all. The petitioner also contends in the alternative in issue 2, that if this Court should hold that the taxpayer is a true trust then the Commissioner erred in failing to determine that the trust's net income was used to pay back taxes and for the purpose of making improvements to the Boulevard building, all of which it is alleged inured to the benefit of the beneficiaries of the trust, the former bondholders. Therefore, argues petitioner, the income of the trust is taxable to the beneficiaries of the trust, the former bondholders, under section 167 and the regulations promulgated thereunder, and is not taxable to petitioner, the trust itself. The Board (now The Tax Court of the United States) had substantially the same issues raised by petitioner's issues 1 and 2 *295 presented to it in the proceeding of Apartment Garages, Inc., Detroit Trust Company, Trustee for Owners of Certificates of Beneficial Interests, Docket No. 104625, Memorandum Opinion, entered May 5, 1942. Respondent cites this case in his brief in main reliance for the determination which he has made. Petitioner concedes in its brief that the Apartment Garages, Inc. case was decided against the contentions which it is making in the instant case, but argues that the Board erred in its decision in that case. We have carefully considered petitioner's arguments and we do not agree that the Board erred in its decision in the Apartment Garages, Inc. case. The declaration of trust involved in the instant case is in evidence and it has been carefully examined. It seems clear that under the terms of the trust, it is not a mere agency for the bondholders nor is the income of the trust currently distributable to the beneficiaries of the trust. It is of course clear that the trustee had the power and discretion to distribute in any year the net income of the trust but the facts do not show that it made any distribution of the income in either 1938 or 1939 to the beneficiaries *296 of the trust. It did not pay or credit the net income of the trust in either of the taxable years to the beneficiaries of the trust. Nor do we think that the facts in the instant case bring it within the provisions of section 167, Revenue Act of 1938 and of the same section in the Internal Revenue Code, as contended by petitioner. In the Apartment Garages, Inc. case, supra, it was held that the taxpayer was a taxable trust existing primarily for the acquisition and liquidation of certain property for the benefit of the beneficiaries of that trust and that it was subject to tax as provided by sections 161 and 162 of the Revenue Act of 1936, which were applicable in that case. Sections 161 and 162 of the Revenue Act of 1936 are the same as sections 161 and 162 of the Revenue Act of 1938 and of the Internal Revenue Code. We hold that these sections are applicable in the instant case, and that petitioner is taxable under section 161 and that it is not entitled to a deduction under section 162 (b), on the ground that the net income was currently distributable to the beneficiaries of the trust. We also hold that petitioner is not entitled to a deduction under section 162(c) because *297 none of the net income of the trust was paid or credited to the beneficiaries of the trust in either of the years 1938 and 1939. We further hold that section 167 is not applicable in the instant case because the facts do not bring it within the provisions of that section. We, therefore, hold against petitioner as to issues 1 and 2 stated above. Petitioner's assignment of error with respect to the Commissioner's determination of the depreciation base reads as follows: That if any trust was taxable under the provisions of the Revenue Act of 1938 of which the Petitioner was Trustee and which existed during the years 1938 and 1939, with respect to the Boulevard Property, the trustee is entitled to a deduction for depreciation based upon the fair market value of the property at the date of acquisition by it, which, in this case is November 25, 1936. The basis of depreciation should be of a value of not less than $408,000 for the buildings, which valuation represents the fair market value of said buildings on that date. The Commissioner in his brief in respect to this issue, among other things, says: The cost of assets bid in by a mortgage creditor on foreclosure is to be determined *298 by the fair market value thereof. Palm Springs Holding Corporation v. Commissioner (1942), 315 U.S. 185. It is recognized that the "bid price" of property does not necessarily constitute the fair market value thereof. However, in the absence of clear and convincing evidence to the contrary, said price constitutes the fair market value of property. Respondent then argues that petitioner has not sustained its burden of proof on this issue. Thus it will be seen that this issue is not one of law between the parties but is one of fact. We think petitioner has sustained its burden of proof on this issue. Petitioner, amongst other evidence introduced on this point, introduced the testimony of Leonard Reaume and Alfred W. Palmer, who testified as to appraisals which they had made of the property as of the date of petitioner's acquisition of the property in 1936. These witnesses have had wide experience in appraising property situated in the City of Detroit and appeared well qualified to testify as experts in the valuation of Detroit real estate. Reaume testified that in his appraisal of the property he arrived at a valuation on the basic date of $620,000 *299 of which $162,500 should be allocated to the land and $457,500 should be allocated to the building. Palmer testified that the property had a value of $570,000 on the basic date of which $380,000 should be allocated to the building and $190,000 should be allocated to the land. We have carefully examined this testimony as well as all of the other testimony in the record and have found in our findings of fact that the value of the property on the basic date was $570,000, of which $190,000 should be allocated to land and $380,000 to buildings. We deem it unnecessary to go into a detailed discussion of the factors which led us to arrive at these valuations. The facts upon which they are based are stated in considerable detail in our findings of fact, and we think it is unnecessary to report them in this opinion. We realize that it is frequently difficult to arrive at property valuations retroactively. We are convinced, however, that the property here involved had a value of at least $570,000 on the basic date in question. We are not convinced that it had any higher value than that and we have, therefore, fixed that figure as the valuation of the land and building. The deficiencies should *300 be recomputed using in the depreciation base $380,000 as the value of the Boulevard building at the time it was acquired by petitioner in 1936. There seems to be no dispute as to the cost of capital improvements added to the building since the date of acquisition. Decision will be entered under Rule 50.