COMMISSIONER OF INTERNAL REVENUE v. BANKERS FARM MORTGAGE CO.

No. 8516.

Circuit Court of Appeals, Seventh Circuit.

Dec. 1, 1944.

J. P. Wenchel and Chas. E. Lowery, both of Washington, D. C., Bureau of Internal Revenue, and Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Muriel S. Paul, Asst. Attys. Gen., for petitioner.

John E. Hughes, of Chicago, Ill., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

The Commissioner assessed a deficiency income and excess profits tax of $323,070.-60 against respondent for the years 1934, 1935, 1937, and 1938. On appeal, the United States Tax Court set aside the assessment. This appeal by Commissioner followed.

The asserted tax deficiency was based on taxpayer's use of its predecessor's basis in determining gain or loss upon the sale of assets. In determining the basis for tax purposes, the bid price of the assets acquired by the taxpayer at the receiver's sale was used. The gain or loss was computed for the years, on this bid price as the cost price.

Fundamentally, the legal question is: Was there a "reorganization" within the tax statute provisions [1] whereby there was an acquisition by taxpayer of "substantially all the properties of another corporation," and,—did there remain "immediately after the transfer an interest or control in such property of 50 percentum or more * * * in the same persons *or any of them* * *"?

Taxpayer's predecessor, the Bankers Joint Stock Land Bank (which we will term the Bank) was organized in 1916. On July 1, 1927, it was declared insolvent and a receiver was appointed. Its capital structure consisted of $1,200,000 of stock and $15,771,600 of bonds. A bondholders committee acquired 95.7% of the bonds by November 18, 1931.

Taxpayer was organized, September 15, 1931, by that group of the Bank's bondholders. A plan was evolved (to become effective on acquisition by taxpayer of 95% of the Bank's bonds) to exchange stock of the taxpayer, of equal face value, for bonds of

---

[1] Revenue Act of 1932.

"§ 112. Recognition of Gain or Loss

"(a) *General Rule.* Upon the sale or exchange of property the entire amount of the gain or loss, * * * shall be recognized, except as hereinafter provided in this section. * * *

"(4) *Same—Gain of Corporation.* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

* * * * * * *

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of

shares of all other classes of stock of another corporation, *or substantially all the properties of another corporation),* * * *".

"§ 113. Adjusted Basis for Determining Gain or Loss

"(a) *Basis (Unadjusted) of Property.* The basis of property shall be the cost of such property; except that—

* * * * * *

"(7) *Transfers to Corporation Where Control of Property Remains in Same Persons.* If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of *50 per centum or more remained in the same persons or any of them,* then the basis shall be the same as it would be in the hands of the transferor, * * *". 26 U.S.C.A. Int.Rev.Acts, pages 511 et seq., 514 et seq.

the Bank, or to pay 40% cash for the bonds if stock were refused. Under this plan, taxpayer did exchange 45,262 shares of its stock for $4,526,200 (approximately 30%) of the Bank's bonds, and acquired $11,021,000 (approximately 70%) of the bonds for the aforesaid cash payment.[2]

The taxpayer finally acquired 98.87% of the bonds of the Bank (the other 1.13% bondholders could not be found, and the plan provided for a fund to cover these unlocated bonds). Thereafter a sale of the assets by the receiver was had, and taxpayer purchased the assets on August 5, 1932, for $2,401,000, paid for by $24,500 in cash, and the balance in bonds.

The Tax Court held, relying upon the case of Palm Springs Holding Corporation v. Commissioner, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785, that

"The transaction constituted a reorganization under section 112 (i) of the Revenue Act of 1932 and that petitioner is entitled under section 113. (a) (7) to use the basis of the transferor as to the assets acquired in computing gain or loss on their disposition."

It is the Government's position that the statutory requirement of a continuance of *50% interest or control in the same persons or any of them* was impossible in this case since taxpayer nearly a year *before the purchase of the assets* had bought an interest of over *70%* in the Bank, and therefore only a *30%* interest remained to continue in control of the property. It regards as immaterial the fact that 98% of the bondholders' interest was in the taxpayer immediately before and immediately after the sale of the assets by the Bank to the taxpayer. It says, this reorganization if it be considered to envelop *all* the steps leading to the sale discloses that at the time of the *beginning* of the reorganization transaction and at the *end* of the said transaction only 30% of the bondholders remained constant, and the statutory requirement of 50% is therefore absent. It argues that since all the steps must be considered together in order to have a reorganization at all, consistency forbids our regarding the bondholding interest solely as of August, 1932 for determining continuity of interest, and our regarding a

much earlier and longer period, for determining the existence of a statutory reorganization. In other words, we must use the same measuring stick (the same dates) in both instances—the status of the control at the beginning and end of the reorganization period.

We are unable to accept this contention. It fails to appreciate or accept the qualifying phrase, "or *any* of them" which modified the statutory requirement that 50% interest or control in such property remain "in the same persons." We construe the modifying phrase to mean that if A and B held 90% at the beginning of the reorganization and A held 60% after the reorganization was effected, there would be a statutory continuity of interest. No other good reason for the existence of the modifying phrase "or any of them" has been suggested or occurs to us. It cannot be ignored in applying this statutory test to the facts in the instant case.

The Government contends that there was no "reorganization" in fact. In other words, it argues that "there was nothing more than a simple case of a purchase by a creditor of the assets of an insolvent debtor. The case in this aspect is precisely the same as that in which a mortgagee forecloses and acquires the mortgage property at the foreclosure sale."

In our opinion, there was much more than a foreclosure or a sale of the debtor's property. There was a carefully formulated plan for the acquisition of both the bonds and the assets. After the appointment of a receiver in *1931*, a bondholders' committee started on its reorganization plan by collecting the bonds. Several plans were proposed for the acquisition of the assets of the bank. Finally a plan was proposed which was later effectuated. It was to become effective when 95% of the bonds had been deposited. The committee acquired that per cent by November 18, 1931. Then the taxpayer, which had been formed the month before, began negotiations for the purchase of the assets from the receiver, and did acquire the assets on August 5, *1932*.

This is the same sort of procedure which was followed in the case of Palm Springs Holding Corp. v. Commissioner, 315 U.S.

---

[2] The liquidating receiver of the Bank paid more than 20 percent. on the bonds, and upon the sale of the assets, the cash items and Government bonds were not transferred but were reserved and were distributed as a liquidating dividend on said bonds.

185, 62 S.Ct. 544, 86 L.Ed. 785. That case involved the formation of a plan by indenture bondholders to receive the insolvent company's assets in exchange for stock. It is true, that in that case there was no acquisition of old bonds by the new company, for cash, as here. We are satisfied that there exists no material difference in the facts. This case is governed by the decision in that case.

The judgment is affirmed.