## FAIRMONT ALUMINUM CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5943.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1950.

Decided March 8, 1950.

Earl Q. Kullman, New York City, (Kirlin, Campbell, Hickox & Keating, New York City, on the brief), for petitioner.

Virginia H. Adams, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack and Helen Goodner, Special Assistants to the Attorney General, on the brief), for respondent.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition by the Fairmont Aluminum Company to review a decision of the Tax Court of the United States; and the only material question presented relates to the affirmance of a deficiency assessment of corporate excess profits taxes for the year 1944. Taxpayer had included in the equity invested capital reported in its return an item of $950,000; and the exclusion of this item resulted in the deficiency assessment of which complaint is made. The facts may be stated briefly as follows:

Petitioner was organized in the year 1926 and acquired property which had formerly belonged to the West Virginia Metal Products Corporation. The balance sheet of that corporation of June 30, 1923 shows capital liabilities of $2,448,750, including first mortgage bonds of $1,448,405, and capital assets of $2,529,774.33 consisting of real estate, plant and development listed at $1,669,247.20 and machinery and equipment at $860,527.13. The property was sold under foreclosure proceedings on March 15, 1924 and purchased by a committee of first mortgage bondholders, who held it until September 1926, when they transferred it to the taxpayer corporation pursuant to a contract entered into after "arm's length" negotiations with one W. J. Adam acting in behalf of himself and other individuals known as the "Adam group."

The taxpayer was organized by the Adam group who paid into its treasury $200,000 for 2,000 shares of its preferred stock. Under the contract between this group and the bondholders committee, the latter sold and transferred to the taxpayer the property which had been acquired in the foreclosure proceedings two years before, with the exception of two pieces of real estate and certain personal property, for eight non-negotiable notes in the aggregate sum of $550,000, and 3,000 shares of the common stock of taxpayer, being 5% of the 60,000 shares of common stock issued. The notes were to be secured by mortgage on the property and were to bear 7% interest, with a provision that one should mature each year.

The taxpayer contends that the item of $950,000 included in equity invested capital in its 1944 excess profits tax return represents the value of the assets acquired by taxpayer from the bondholders' committee in excess of the $550,000 of notes executed at the time, its contention being that the property was worth $1,500,000. No evidence was offered in support of this valuation, however, except the 1923 balance sheet above mentioned. There is no proof that the property transferred to taxpayer exceeded in value the amount of notes executed; nor is there proof as to the value of the property shown on the balance sheet, nor as to what, if anything, was paid in cash or in property for the stock there listed. The Tax Court, without going into the question of reorganization, denied taxpayer's claim because of this lack of proof, saying:

"Though reluctant to base our conclusions on failure of proof, we can only conclude that the necessary proof has not been made. The balance sheet of the predecessor corporation, without more, cannot logically be regarded as proof of its basis. It does not disclose the manner of acquisition of the assets by the predecessor corporation, whether by issuance of stock or for cash or in connection with a reorganization. It does not indicate necessarily whether the figures were original cost or cost less adjustments or whether inventories were at cost or on some other basis. Moreover, the balance sheet in evidence before us is that of the old corporation, at an earlier date, whereas we are just here concerned with the basis of the property transferred to the petitioner. * * * Assuming that property was transferred for petitioner's stock, we are unable to say what the substituted basis thereof in the hands of the old corporation may have been. Undoubtedly no basis for some other amount of property, greater by an unknown quantity, can be used. We conclude that the petitioner has failed to show the substituted basis of the predecessor corporation. Doyle v. Mitchell Bros. [Co.], 247 U.S. 179 [38 S.Ct. 467, 62 L.Ed. 1054]; Hollywood, Inc., 10 [T.C.] 175; Stock Yards Nat. Bank v. Com[missioner]. [8 Cir.], 153 F.2d 708.

"The same indefiniteness and difference between property inventoried in September 1926 and property covered by the balance

sheet of June 30, 1923, or March 15, 1924, is also fatal to the petitioner's contention that, assuming no reorganization and no substituted basis, the respondent erred in failing to include in petitioner's invested capital $1,500,000 as the fair market value of the assets acquired by the petitioner from the old corporation. The date of the deed to the petitioner appears as September 29, 1926. The inventory of September 17, 1926, contains no values but is a mere list of the properties. Any attempt to arrive at values must, therefore, depend upon the balance sheet. No other attempt was made to prove the $1,500,000 fair market value. The proof is insufficient, in our view, to make even a prima facie showing of the value of the property actually transferred to the petitioner. We hold that proof of fair market value is not shown.

"These conclusions make it unnecessary to consider the arguments briefed by the parties as to whether or not various cases involving reorganizations and 'inheriting' of bases here apply. Section 718(d) and its reference to section 760 of the Internal Revenue Code, as cited by the petitioner, do not, in our view, alter these considerations."

This holding of the Tax Court is in accord with its holdings in the Regina Corporation 1947 (P-H) T.C.M. 47,133, and Towers Warehouses, Inc., 1947 (P-H) T. C.M. 47,013 and is manifestly correct. Taxpayer contends that it is entitled to treat as equity invested capital the value of the property acquired in 1926 less the amount of the $550,000.00 of notes because of the provisions of I.R.C. §§ 718(d) and 760(b), 26 U.S.C.A. §§ 718(d) 760(b); but the balance sheet, which is the only proof offered by taxpayer, does not establish either the cost of the property to the West Virginia Metal Products Corporation or its value when acquired by taxpayer. Manifestly a corporate balance sheet more than two years old has no tendency to establish the value of property after it has been foreclosed and held for more than two years thereafter. From the stipulated facts that

the negotiations between the bondholders committee and the Adam group were conducted at arm's length, and that only 5% of the common stock was issued to the bondholders with $550,000 of notes, whereas 95% went to the preferred stockholders who put up $200,000, it is a fair inference that the common stock was considered to have little or no value and that the $550,000 was considered the fair value of the property transferred.

It is perfectly clear that section 760 (b) of the Internal Revenue Code upon which taxpayer relies is of no help to it. That section provides that, in the application of the equity invested capital provisions to a transferee upon an exchange of property for stock, only the excess of the value* of the property over a liability assumed or property transferred in exchange shall be considered as having been given in exchange for the stock. Here it is manifestly impossible to say, upon the evidence offered, that the property transferred had any value in excess of the $550,000 of notes executed.

Taxpayer contends that it came into being as the result of a tax free reorganization of the West Virginia Metal Products Corporation, relying for this position principally upon the decision in the case of Palm Springs Holding Corp. v. Commissioner, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785; but even if this were true, it would not benefit taxpayer. The balance sheet offered furnishes no basis for computing equity invested capital in connection with that reorganization or otherwise; and, in addition to this, there is no evidence to take the case out of the ordinary rule that upon a reorganization where one corporation is organized to take over the assets of another, the new corporation takes only the value of the assets transferred (less the transferor's debts) as its equity invested capital. Where the old corporation has a deficit, this may be included in the equity invested capital of the new under 718(a) (7), but only if the conditions of 718(c) (5) are met, viz., if all the property of the old cor-

---

* "Basis in the hands of the transferee of the property of the transferor received by the transferee."

poration is transferred to the new, if the sole consideration of the transfer of the property is the transfer to the transferor or its shareholders of all stock of all classes of the transferee, and if the transferor corporation is forthwith completely liquidated and immediately after the liquidation the shareholders of the transferor own all such stock. Even if the bondholders of the West Virginia Metal Products Corporation be treated as stockholders, under the doctrine of the Palm Springs case, it is obvious that these conditions have not been met. This being true, it is not necessary to consider whether the reorganization falls within the rule of the Palm Springs case.

We need not consider the arguments relating to the 1942 and 1943 taxes. It is conceded on all sides that these taxes have been paid, and it was stipulated that the question involved would be adjusted under Rule 50, 26 U.S.C.A. § 1111. Any controversy with regard thereto has become moot.

For the reasons stated, the decision of the Tax Court will be affirmed.

Affirmed.