## COMMISSIONER OF INTERNAL REVENUE v. SOUTHWEST CONSOL. CORPORATION.

No. 9524.

Circuit Court of Appeals, Fifth Circuit.

April 19, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., both of Washington, D. C., for petitioner.

Fred Simon, of Shreveport, La., and A. Chauncey Newlin, of New York City, for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Respondent, Southwest Consolidated Corporation, acquired all the assets of Southwest Gas Utilities Corporation, in June, 1934, through the medium of a bondholders' committee in a reorganization to which

both corporations were parties. In making returns for income and excess profit taxes for 1934 and 1935 respondent claimed losses for certain worthless assets charged off and took the cost of the assets to the old corporation as a basis for determining loss or gain. The Commissioner disallowed the deductions; held there had been no tax exempt reorganization; that the transfer was in fact a purchase from the bondholders' committee, a third person; that respondent acquired the assets of the old company at the price they were bid in by the bondholders' committee and was not entitled to take their cost to the old company as a basis for determining gain or loss; and determined deficiencies. The Board of Tax Appeals reversed the Commissioner, holding there had been a tax exempt reorganization under the provisions of Sections 112 and 113 of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Acts, pages 692, 696;[1] relying upon Commissioner v. Kitselman, 7 Cir., 89 F.2d 458, certiorari denied 302 U.S. 709,

[1] "§ 112. Recognition of Gain or Loss

"(a) General Rule. Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) Exchanges Solely in Kind—

\* \* \* \* \* \* \*

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \* \* \*

"(g) Definition of Reorganization. As used in this section and section 113—

"(1) The term 'reorganization' means \* \* \* (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.

\* \* \* \* \* \* \*

"§ 113. Adjusted Basis for Determining Gain or Loss

"(a) Basis (Unadjusted) of Property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

"(7) Transfers to corporation where control of property remains in same persons. If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

"(8) Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation—

"(A) By the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

"(B) As paid-in surplus or as a contribution to capital,

"then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

By Section 112(g) (1): "The term 'reorganization' means \* \* \* (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: \* \* \* of substantially all the properties of another corporation."

58 S.Ct. 29, 82 L.Ed. 548; Commissioner v. Newberry Lumber & Chemical Co., 6 Cir., 94 F.2d 447, and various of its own decisions, in which it was held that the bondholders of an insolvent corporation, after default have a pecuniary interest in the assets.

As the opinion of the Board is not published it is necessary to review the material facts. On May 1, 1932, Southwest Gas Utilities Corporation defaulted in the payment of interest on certain of its bonds, maturing in 1943. It had outstanding 171,915 shares of common stock, 32,244 shares of preferred stock, $2,871,500 of said first lien bonds, secured by pledge of certain assets, including stocks and bonds of subsidiary companies, $126,000 convertible gold notes, unsecured, and $31,945 of other unsecured claims.

A bondholders' committee was organized and about 85 per cent of the outstanding bonds were deposited with it. Members of this committee became directors of the company and after October 7, 1932, constituted a majority of the board. On April 10, 1933, a bill in equity was filed in the Court of Chancery, in Newcastle, Delaware, on which receivers were appointed in March, 1934. The bondholders' committee was permitted to intervene and a plan of reorganization was proposed and adopted. Under it a new company, respondent, was incorporated, with the right to acquire by direct purchase or foreclosure the assets of the old company. The new company had a financial setup of 200,000 shares of common stock, par value $1 or such par value as might be given them, 2880 Class A option warrants and 50,000 Class B option warrants. The option warrants carried the right to buy common stock at respectively $6 and $10 per share, increasing yearly up to and including 1938. They were doubtless intended to bring in new money and had some present value, which would increase if the company prospered. Based on the fair market value of the assets acquired, the stock of the new company had a book value of $8.85 a share for the whole authorized stock and about $35 per share for the amount issued. But, as they did not of themselves transfer any interest in the new company, they may be disregarded in deciding the case.

Pursuant to the plan of reorganization, by order of the chancery court, the assets pledged as security for the bonds were sold by the trustee at foreclosure sale on June 25, 1934, and were bid in by the bondholders' committee at the price of $660,000. The unpledged assets were sold at public auction on December 16, 1934, for $92,000 and they were also bid in by the bondholders' committee. The cost to the old corporation of these assets was $8,995,724 and their fair market value was $1,766,694. These sales were confirmed by the chancery court and all the assets were transferred to the new corporation in exchange for its stock and warrants. In order to effect the exchange of assets respondent issued 49,286 shares of common stock, 2,760 Class A and 18,445 Class B warrants. Those participating in the plan held $2,450,500 of bonds, $126,000 of notes, 17,297 shares preferred stock (over 53%) and 57,470 shares common stock (over 33%) of the old company. They received 49,224 shares common stock (over 99%) of the new company, 2,140 Class A and 18,445 Class B warrants. Non participating security holders holding $421,000 of bonds and $19,000 of notes received $106,684 in cash.

From the above recited facts it is apparent the case is similar to those considered in the Kitselman and Newberry cases, supra, but is somewhat stronger in favor of the taxpayer because the bondholders agreeing to the plan of reorganization also held substantial stock in the old company.

However, the Commissioner relies upon the case of LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 as overruling those cases and demanding a contrary decision in this case. We can not agree with this contention. In the LeTulle case the transferor received only securities of the transferee, the reverse of the situation in this case, and it was held that in the absence of stock control the transferor became merely a debtor of the transferee, retained no stake in the enterprise, and did not have a continuing pecuniary interest in the assets transferred. The case may be easily distinguished and we do not consider it controlling. The Commissioner also cites Commissioner v. Bondholders Committee (Commissioner v. Marlborough House, Inc.), 9 Cir., 118 F.2d 511, decided after this case was submitted. Those cases may be distinguished from the case at bar. In them apparently there was no initial plan of reorganization but there were a series of happenings from which the Board of Tax Appeals inferred the existence of a plan. We do not find those decisions persuasive when applied to the facts before us.

564

■ ■ There is no doubt in this case there was a reorganization in good faith pursuant to a plan adopted by a large majority of all the parties in interest, bondholders, noteholders, stockholders and even unsecured creditors. It was proposed and worked out by the bondholders' committee and was approved by the Court having custody of the property. It can not be said the bondholders' committee was a third person. When the plan of reorganization was proposed and adopted the committee was in complete control of the old company. It must be presumed they constituted a majority of the Board of Directors with the consent of the stockholders. The bondholders had a pecuniary interest in the assets of the old company to the exclusion of all others. Immediately after the transfer they were in complete control of the transferee and their pecuniary interest in the assets continued. In effect, the committee was the agent of the old company in the transfer of the assets. When they bid them in at public auction they held them as trustee for the new company. In principle and in substantial results the transfer was the same as if it were direct from the old company.

The judgment of the board is affirmed.