**COMMISSIONER OF INTERNAL REVE-
NUE v. ALABAMA ASPHALTIC
LIMESTONE CO.**

No. 9569.

Circuit Court of Appeals, Fifth Circuit.

May 5, 1941.

Maurice J. Mahoney and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

James A. O'Callaghan, of Chicago, Ill., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Touching income taxes for the year 1934, the taxpayer, Alabama Asphaltic Limestone Company, called herein the new corporation, claimed depreciation and depletion deductions based on the cost of

its property to Alabama Rock Asphalt Company, its predecessor in title, called the old corporation. The Commissioner held the proper basis to be the price bid in 1931 on a sale in bankruptcy by a creditors' committee which had the property conveyed to the taxpayer. The Board of Tax Appeals upheld the basis claimed by the taxpayer, thinking there was a reorganization of the old corporation into the new by the acquisition of substantially all of the former's properties by the latter, under Revenue Act of 1928, § 112 (i) (1) (A), 26 U.S.C.A. Int.Rev.Acts, page 379, which entitled the new corporation to the cost basis of the old. Alabama Asphaltic Limestone Co. v. Commissioner, 41· B.T.A. 324. Of the facts there found, the most important are that the old corporation was a wholly owned subsidiary of Deep Water Coal & Iron Corporation, organized in 1927 by the parent company deeding to its subsidiary mineral properties which cost $208,901, for the entire capital stock. The subsidiary had no working capital, and it borrowed some money on the indorsement of the parent company, secured by pledge of the subsidiary's capital stock; but that not being enough, the parent company's stockholders furnished $733,687, on seven percent notes due Feb. 1, 1930, but on an understanding among them all that the notes would be funded into stock or other permanent securities of the subsidiary. Two of the note holders transferred their notes to others who claimed not to be bound by the understanding, refused stock and demanded pay in money. Unwilling to pay them, for the purpose of getting rid of them, the other note holders and creditors had an involuntary bankruptcy started Sept. 11, 1930, in which the subsidiary was adjudged insolvent. It was insolvent according to the books which showed $755,879, besides interest, owing on the notes to the stockholders, besides $8,386 on open account for a similar advancement, and $36,915 due sundry creditors. The book value of assets was about $500,000, but the appraisal put them at $155,876. The parent corporation was itself in an equity receivership. The subsidiary's president was appointed receiver in bankruptcy for the subsidiary, and he was later elected trustee. The bankrupt's business was continued. A plan was formed, in which all creditors joined except the two above referred to, by which a creditors' committee would buy in all the property and business of the bankrupt, and transfer it to a new company, the taxpayer, for its preferred and common stock, to be distributed pro rata to the creditors. The sale occurred accordingly at a price of $150,000. The trustee reported all the circumstances to the court, and that the price was to be paid by the agreement of the creditors to take stock in the new company, except that $15,000 was to be paid in cash to pay expenses of administration, preferred claims and the dividend due non-assenting creditors, with an agreement to supplement the cash if necessary. The plan of reorganization with its acceptances was filed in court. The sale was approved, its terms carried out, the new corporation formed within a few days, and its stock distributed according to the plan. The stockholders of the parent company, who held the 7% notes above referred to, received 95.586% of the stock, other creditors 4.414%. The old business continued without interruption with the former president at its head.

This was a typical reorganization through a court sale of an insolvent corporation. We think it was a reorganization rather than a gain-and-loss-realizing-sale under the income tax laws. The definitions of reorganizations in Revenue Act of 1928, § 112(i), contemplate that there be transfers of title by sale. No difference is indicated between a private and a court sale. What is important is the purpose or plan, and the result of the sale, as defined by the statute. We follow the Board in applying the words of Section 112(i) (1): "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)." As settled in LeTulle v. Scofield, 308 U.S. 415, and cases cited on page 420, 60 S.Ct. 313, 84 L.Ed. 355, acquisition by simple sale for cash, or cash and notes or bonds, is not meant, but on acquisition which has the character of a merger, a transfer bodily of the properties of one corporation to another, accompanied by a retention of a "substantial stake", a "proprietary interest", in the acquiring corporation by those interested previously in the properties. The LeTulle case and Helvering v. Tyng, 308 U.S. 527, 60 S.Ct. 378, 84 L.Ed. 445, settled that such "proprietary interest" is not retained by the transferror becoming a creditor of the acquiring corporation.

They are not like the present case, for the whole capital stock here was taken by the transferror. The question here, not present in those cases, is What sort of relationship to the transferring corporation must those have who ultimately receive the stock which is paid to the transferring corporation? Must they be stockholders in the latter?

■■ In the case of a merger, the transferring corporation ceases to do business. What is paid for its properties goes to discharge its debts first, and the remainder to its stockholders, if solvent. When it is confessedly insolvent, or is so adjudged as in this case, the stock is valueless, the assets have become a trust fund for the benefit of the creditors. The officers are trustees and the creditors the beneficiaries. So in bankruptcy, the creditors alone make determinations and control the disposition of the property. The corporation is not dead, it still has title to its properties, but the creditors rather than the stockholders are the beneficial owners. We are of opinion that an insolvent corporation can be merged or reorganized by a transfer of its properties in accordance with the wishes of its creditors, either by act of the corporation or by a judicial sale by a court acting for that purpose. The consideration, since the business of the old corporation is at an end, will be distributed to its creditors rather than its stockholders, because the proprietary interest in the properties is, since the insolvency, in them. What distinguishes the transaction as a merger rather than a sale is that what is paid for the properties is not money or a money measured obligation, but in whole or substantial part stock in the acquiring corporation, so that the former proprietors of the property continue to have a proprietary interest in it. In this case, but for the two dissenters, there would have been no sale at all, the note holders would have taken stock in the old instead of the new corporation, the former capital stock being ignored or subordinated because of the financial condition of the company. What has happened was not intended by the parties or the court as a sale, but a reorganization by merger. Tax consequences on that basis are in accordance with the truth and justice of the case. Commissioner v. Southwest Consolidated Corporation, 5 Cir., 119 F.2d 561; Commissioner v. Kitselman, 7 Cir., 89 F.2d 458; Commissioner v. Newberry L. & C. Co., 6 Cir., 94 F.2d 447. The note holders were in fact informal stockholders in the transferring corporation, according to Arnold v. Phillips, 5 Cir., 117 F.2d 497.

Affirmed.