opinion. . Raum, Judge: 1. Petitioner acquired the so-called Harbor property in 1939, and the first issue involves its basis for depreciation. Normally, depreciation deductions are based upon cost. Sections 113,. 114, Internal Revenue Code. However, petitioner seeks to use a considerably higher basis, namely, the basis which the property had in the hands of Harbor Trust Incorporated, and its claim is founded on the contention that it acquired the property in a transaction governed by section 112 (b (10) of the Code.[1] If section 112 (b) (10) were applicable, then, pursuant to section 113 (a) (22), the basis in the hands of petitioner would be “the same as it would be in the hands of the corporation whose property was so-acquired * * The applicable provisions are reproduced in full in the margin.[2] We think that sections 112 (b) (10) and 113 (a) (22) do not authorize petitioner to take over the basis of Harbor Trust Incorporated. Petitioner did not acquire the property from Harbor Trust Incorporated, and therefore could not inherit the latter’s basis under those sections. There is no disagreement as to the basic facts concerning the history of the Harbor property. Harbor Trust Incorporated constructed a building, on land owned by it, at a cost of $1,664,660.50. It placed three mortgages on the land and building, the first and senior of these mortgages being executed as> security for a bond issue made to finance the cost of construction. As a result of a default under the third mortgage, the property was sold at a foreclosure sale in April 1928, and a foreclosure deed was given to the purchaser, a nominee of the third mortgagee. The property thereupon passed into new ownership, subject to the two prior mortgages, and Harbor Trust Incorporated lost all right or interest therein. Cf. Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100, 106, 187, N. E. 227, 230. The new owner or his successors in interest, of whom there were several, and all of whom also acted for the former third mortgagee, administered the property until August 1930. At that time there had been a default in payments required to be made under the first mortgage, and the trustees under that mortgage, pursuant to its terms, entered the premises for the purpose of effecting a foreclosure. The property remained, from that time until about February 16,1939, under the control of and was managed by the trustees under the first mortgage. On the latter date, the property was sold to petitioner pursuant to a court decree foreclosing the first mortgage. Petitioner had been organized in accordance with a plan submitted to and approved by the court; its stock had been issued solely for first mortgage bonds; and it bought the Harbor property at the foreclosure sale for $500,000, making payment primarily by applying the first mortgage bonds, at a specified rate, and partly in cash. These facts plainly show that, between the time Harbor Trust Incorporated owned the property and the time petitioner acquired it, there had been interposed a third and separate set of ownership interests, representing the holder of the old third mortgage. The ■original corporation had ceased to own the property by the time petitioner bought it. Indeed, it had long ceased to exist, having been dissolved in 1932. Whether or not the 1939 transfer to petitioner were otherwise a transaction not then subject to tax, as petitioner contends, it did not acquire the property from Harbor Trust Incorporated, or from anyone representing that corporation, and therefore did not become entitled to take over the latter’s basis. Cf. Bondholders Committee, Marlborough Investment Co. First Mortgage Bonds v. Commissioner, 315 U. S. 189; Adwood Corporation, 15 T. C. 148. Of course, section 112 (b) (10) does not require that the old corporation be the transferor in a technical sense; it may well be sufficient if the transfer is made by some intermediary, provided that the separate steps are integrated parts of a single plan (cf. Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179, 184-185), and this is recognized by the Commissioner’s regulations. See Regulations 111, section 29.112 (b) (10)-1. The difficulty here is that there is no nexus whatever between the original corporation, whose basis petitioner wishes to inherit, and the 1939 transfer. Harbor Trust Incorporated had long since passed out of the picture; it was not even a party to the proceedings, nor could it have been, since it had been dissolved some six or seven years earlier. The 1939 proceedings were in no sense intended to reorganize Harbor Trust Incorporated or to foreclose a mortgage on its property. We have here no “intermediate procedural devices,” such as were noted in the Alabama Asphaltic Limestone Co. case.[3] By reason of the 1928 foreclosure sale, brought about by the third mortgagee, all of the interest of Harbor Trust Incorporated in the property was completely wiped out. Thereafter, for some 27 months, until the first mortgage trustees made entry upon the property, the property was in the hands of the purchaser at the foreclosure sale or his successors. Default on the first mortgage bonds occurred for the first time in 1930. Petitioner appears to contend that in reality the equity in the Harbor property was owned by the first mortgage bondholders as far back as the time when the third mortgagee foreclosed and bought the property in 1928, and that therefore there has been no break in the chain of ownership between the corporation and petitioner. Its theory would appear to be that declared in Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179, 183-184, and Helvering v. Cement Investors, Inc., 316 U. S. 527, 532, which recognized that there may be circumstances in which creditors may be considered to have displaced the stockholders as the real owners of the corporate enterprise. To sustain equitable ownership in the first mortgage bondholders at some particular time under the principle of those cases, however, petitioner must establish at the very least that the debtor was insolvent as to them at the time in question. It has not done so. The stipulation between the parties that the corporation was “insolvent” in 1928 is insufficient for this purpose, since it leaves unresolved whether at that time the insolvency pertained only to general creditors, or to the third mortgage or the second mortgage, or whether it was so serious as to affect rights under the first mortgage as well. There was no evidence that prior to 1930, when there was a failure to make certain payments required under the first mortgage, there had been any default in the financial obligations imposed by that mortgage, or that the first mortgage bondholders or their trustees considered themselves entitled for any reason to foreclose under the mortgage or acquire control of the property. No proof was made of any attempt to exercise or enforce any rights of the first mortgage bondholders against the Harbor property prior to August 6, 1930, when the trustees entered the premises for the purpose of foreclosure. In these circumstances, there is no justification for considering the first mortgage bondholders as the equitable owners in 1928. It can be of no assistance to petitioner to find such equitable ownership arising at some time later than 1928 — and on the evidence that would not appear to be earlier than 1930 — because there then would come into being a substantial gap between the corporation’s ownership and that of petitioner. Nor can that gap and the intervening interests be closed by a claim that the third mortgagee, in foreclosing and acquiring control over the Harbor property, acted for the first mortgage bondholders, and that in substance there was really a single transaction between the time the corporation’s interest in the property was severed and the petitioner’s interest commenced. The facts simply do not support such a conclusion. 2. Abatement and refund in 1947 of local real estate taxes accrued and deducted from gross income in earlier years present the second principal issue. In 1944, 1945, and 1946, petitioner paid real estate taxes as assessed by the City of Boston. Considering the tax assessed in each of those years to be excessive, petitioner promptly filed an application for abatement in each year upon payment of the tax. On April 25, 1947, the Massachusetts Board of Tax Appeals ruled in petitioner's favor on all these applications and ordered abatements of $7,980 in the 1944 tax, $12,750 in the 1945 tax, and $8,400 in the 1946 tax. On the same date, refund was made to petitioner of these amounts, in the total sum of $29,130. Respondent included the total amount refunded in petitioner’s 1947 income. Petitioner alleges this to be error. It asserts that these re-, funds were not income in 1947, but that instead the abatement applicable to a particular year must be taken back and applied to reduce the deduction taken for that year for real estate taxes, and it filed amended income tax returns in order to make these adjustments. Support for petitioner’s position may be found in some of the de--cisions, reflecting the uncertainty that existed on this point at one time. See, e. g., Leach v. Commissioner (C. A. 1), 50 F. 2d 371; E. B. Elliott Co., 45 B. T. A. 82. However, the theory of these cases has more recently been explicitly rejected (Bartlett v. Delaney (C. A. 1) 173 F. 2d 535, certiorari denied, 338 U. S. 817; Stanard-Tilton Milling Co., 3 T. C. 1026; Baltimore Transfer Co., 8 T. C. 1; Taylor Instrument Cos., 14 T. C. 388), and the principle which here controls is the one applied by respondent. The refunds received in 1947 must therefore be regarded as income in that year. The controversy between the parties concerning these real estate taxes extends, furthermore, to the manner in which they are to be treated initially for deduction purposes. The problem posed deals essentially with the time at which the deduction is to be taken. Massachusetts law called for assessment of the tax to the owner of the property as of January 1 of the year of assessment, and made it a lien on the property as of that date. Mass. Ann. Laws, c. 59, sec. 11; c. 60, sec. 37. The state law required that bills for the tax determined to be due and payable for a particular year be sent out not later than June 14 of that year. Mass. Ann. Laws, c. 59, sec. 57. In fact, however, during 1944 and succeeding calendar years, it was not until August that petitioner’s tax bills were mailed to it and petitioner was informed of the amount of tax assessed against it. Since petitioner’s income tax returns were filed on a fiscal year ending April 30, it was not in receipt of those tax bills either by the time its fiscal years closed or the due date arrived for filing its income tax returns for those years. For each of the fiscal years ending in these calendar years, petitioner therefore accrued an estimated amount on account of the real estate tax to be assessed, and deducted the estimated amount on its income tax return for the particular fiscal year. In determining the deficiencies, respondent adjusted the deduction for real estate tax for a particular year so as to make it equivalent to the amount of tax thereafter actually assessed for that year. Petitioner, on the other hand, in keeping with its view, rejected above, that the 1947 refunds were not income, would adjust the initial estimates to reconcile them with the amounts ultimately held due in the abatement proceedings, giving effect to the refunds in this way. It denies that the return for a particular fiscal year must be corrected for the difference between estimated and assessed amounts of tax. It asserts in the alternative, if adjustment must be made for this difference, that the claimed deduction in the amount of the estimated tax must be allowed to stand for the fiscal year to which it applies, but the difference between the estimated and assessed tax is to be taken into account in the deduction for taxes in the next fiscal year, when the actual tax for the prior fiscal year could first be known Thus the tax assessed in August 1944, as of January 1, 1944, was $7,980 more than the amount petitioner estimated on its return for the year ending April 80,1944, and under this alternative method that difference would be deducted on its return for the following year ending April 30,1945. The problem is by no means free from difficulty. It has been indicated that accrual of an item must be preceded by events which not only determine liability but also fix the amount. Cf., e. g., United States v. Anderson, 269 U. S. 422, 441. On the other hand, it has been held that where liability is fixed and where the amount involved can be estimated with reasonable accuracy, the liability may be accrued even though it may be necessary at some later time to correct the estimate by an amended return or by some other, means. Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 297-299. And in the case of Massachusetts real estate taxes, it has already been held that liability accrues as of the date when they are assessed and become a lien. H. H. Brown Co., 8 T. C. 112 (Acq., VII-1 C. B. 5). In these circumstances, we hold that the real estate taxes in question accrued during the year as of which they were assessed, and that the estimates made by petitioner must be corrected so as to reflect the amounts actually assessed. Decision will be entered under Bule 50. In the pleadings, petitioner relied upon section 112 (b) (4) as well as section 112 (b) (10). However, petitioner's brief makes no argument based upon section 112 (b) (4), so that any contention based upon section 112 (b) (4) must be deemed to have been, abandoned. SBC. 112. RECOGNITION OF GAIN OR LOSS. [[Image here]] (b) Exchanges Solely in Kind.— [[Image here]] (10) Gain or Loss Not recognized on Reorganization op Corporation in Certain Receivership and Bankruptcy Proceedings.-No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation- (A) in a receivership, foreclosure, or similar proceeding, or (B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended, to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) op Property. — The basis of property shall be the cost of such property; except that— * * • * * * . * (22) Property Acquired on Reorganization op Certain Corporations. — If the property was acquired by a corporation upon a transfer to which section 112 (b) (10), or so-much of section 112 (d) or (e) as relates to section 112 (b) (10), is applicable, then, notwithstanding the provisions of section 270 of the National Bankruptcy Act, as amended, the basis in the hands of the acquiring corporation shall be the same as it would be in-the hands of the corporation whose property was so acquired, increased In the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred, and such basis shall not be adjusted under subsection (b) (3) by reason of a discharge of indebtedness pursuant to-the plan of reorganization under which such transfer was made. In the Alabama Asphaltic Limestone Co. case, the Court said (315 U. S. at pp. 184-185) : * * * Some contention, however, is made that this transaction did not meet the statutory standard because the properties acquired by the new corporation belonged at that time to the committee and not to the old corporation. That is true. Yet, the separate steps were integrated parts of a single scheme. Transitory phases of an arrangement frequently are disregarded under these sections of the revenue acts where they add nothing of substance to the completed affair. Gregory v. Helvering, 293 U. S. 465; Helvering v. Bashford, 302 U. S. 454. Here they were no more than Intermediate procedural devices utilized to enable the new corporation to acquire all the assets of the old one pursuant to a single reorganization plan.