**DAVIS, Collector of Internal Revenue,**

v.

**BANKHEAD HOTEL, Inc.**

**No. 14806.**

United States Court of Appeals
Fifth Circuit.

May 14, 1954.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Melva M. Graney, Sp. Asst. Attys. Gen., Lee A. Jackson, Carolyn R. Just, Sp. Assts. to the Atty. Gen., Frank M. Johnson, Jr., U. S. Atty., R. Clifford Fulford, Asst. U. S. Atty., Birmingham, Ala., for appellant.

John W. Gillon, Frank M. Young, of Spain, Gillon & Young, Birmingham, Ala., for appellee, Frank A. Berry, Nashville, Tenn., of counsel.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This action was brought by the appellee against the appellant to recover additional excess profits taxes for the calendar years 1943 and 1944. The opinion of the district court is reported in 112 F.Supp. 180. The case was submitted to the court upon a stipulation of the material facts, supplemented by an affidavit of L. B. Stevens, which by agreement was accepted as a correct statement of additional facts. The question presented is whether the taxpayer's basis for depreciation of its hotel properties, acquired by it in 1935, should be determined by reference to the basis of the properties in the hands of the original corporate owner, because they were acquired from it in a tax-free reorganization (as held by the district court), or whether the taxpayer's basis should be the same as the basis of the properties in the hands of an intermediate owner, a holding company (as the commissioner determined).

Under the facts as stipulated and found by the court below, the Bankhead Realty Company was organized in 1925 under the laws of Delaware; its corporate name was later changed to Bankhead Hotel Company; and it will be referred to as the Delaware corporation. It purchased the realty in Birmingham, Alabama, for $225,000, and erected on it a hotel which, with the furniture, fixtures, and equipment, cost $1,575,000. The financing of this project included a first mortgage 7%-bond issue of $950,-000, with trust indentures in the usual form properly filed and recorded. On May 6, 1930, three unsecured creditors and stockholders of the Delaware corporation organized the Bankhead Holding Company under the laws of Alabama, and transferred to it the unsecured indebtedness held by them against the Delaware corporation. After the holding

company recovered a judgment against the Delaware corporation, the county sheriff levied upon and sold the real and personal property of the Delaware corporation at execution sales held respectively on August 28 and September 22, 1930, the holding company acquiring the realty for $500 and the personalty for $200, subject to the lien of the outstanding mortgage bonds in the sum of $850,000, which the holding company did not assume.

The Delaware corporation having defaulted in the payment of principal and interest on the bonds, the trustee under the mortgage took possession of the hotel property and supervision of its operation. Thereafter, on January 15, 1931, a bondholders protective committee was formed, with which bonds of the face value of $774,600 were deposited, under an agreement making the committee the legal owner and holder of the bonds. The committee approved the trustee's acts in supervising the operation of the hotel. Over four years after the sheriff's sales, when the operation by the trustee proved unsuccessful, a petition was filed by the holding company for reorganization under Section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207. Pursuant to the plan of reorganization, the taxpayer was organized under Alabama law as a third corporation, to which the realty, hotel building, furniture, fixtures, and equipment, were conveyed by deed executed by the holding company and the trustee pursuant to a decree of the bankruptcy court. The old stockholders received nothing; the taxpayer exchanged its debenture notes and its stock, common and preferred, for the outstanding bonds of the Delaware corporation.

Although the taxpayer ultimately did acquire all of the properties formerly owned by the Delaware corporation, there was no continuity of interest in a reorganization in bankruptcy to which both the Delaware corporation and the taxpayer were parties. While a creditors' committee may assume the position of the old stockholders and hold title temporarily as one step in a plan of reorganization, here there was a complete break in the continuity of interest by the intervening ownership of the holding company. The Delaware corporation was neither the transferor nor bankrupt: the holding company was both the bankrupt and transferor. The taxpayer was the transferee and acquired the hotel properties in pursuance of the decree of the bankruptcy court. The property whose basis is in controversy here was not acquired by the taxpayer from the corporation that was entitled to use that basis for tax purposes. Sections 112(b)(10) and 113(a)(22), 26 U.S.C.A., authorize a carry-over of the basis of the property in the hands of the transferor, not its basis in the hands of one who may have occupied an earlier position in the chain of ownership. Cf. Bondholders Committee v. Commissioner, 315 U.S. 189, 192, 62 S.Ct. 537, 86 L.Ed. 784.

■ The application of Section 112 (b)(10) is to be limited strictly to a transaction of the character set forth in such section. The section is inapplicable unless there is a bona fide plan of reorganization approved by the court having jurisdiction of the proceeding, and the transfer of the property of the insolvent corporation is made pursuant to such plan. It is unnecessary that the transfer be directly from the insolvent corporation; but it must be an integral step in the consummation of the reorganization plan approved by the court. Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, affirming this court's decision in 119 F.2d 819; Palm Springs Holding Corp. v. Commissioner, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785. Both the legislative history and the Regulations indicate that the rule of Bondholders Committee v. Commissioner, 315 U.S. 189, 62 S.Ct. 537, is applicable here with respect to Section 112(b)(10), which applies only to a genuine reorganization where the requisite continuity of interest exists. See S.Rep.No. 627, 78 Cong., 1st Session, pp. 49–53 (1944 Cum.Bull., 973, 1010–1012); Treasury Regulations 111, Sec-

tion 29.112(b)(10)–1; Chicago Stadium Corp. v. Commissioner, 13 T.C. 889.

■ At the time that the continuity of interest was broken by the holding company acquiring ownership at the sheriff's sale in 1930, there had been no affirmative action by the bondholders to establish any rights given to them under the trust indenture in case of default. The trust indenture required that a notice of default in payment of principal and interest must be given by the trustee to the owner, before any right to declare the bonds due or to enter and take possession of the property or sell it would arise. The statement in the affidavit of Mr. Stevens that he had given notice of default occurring in 1928 or 1929 does not satisfy that requirement; he stated that he had not requested action on behalf of the bondholders, and also that the default in payment of interest to May, 1930, had been cured. Thus no notice was given by the trustee until 60 days prior to November 1, 1930, when the trustee took possession of the property. The mere existence of default did not enlarge or accelerate the rights of the first mortgage bondholders. Bondholders Committee v. Commissioner, 315 U.S. 189, 62 S.Ct. 537. See also Palm Springs Corp. v. Commissioner, 315 U.S. 185, 62 S.Ct. 544; Commissioner v. Southwest Consol. Corp., 5 Cir., 119 F.2d 561, reversed on other grounds, 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789, rehearing denied, 315 U.S. 829, 62 S.Ct. 802, 86 L.Ed. 1223; 316 U.S. 710, 62 S.Ct. 1266, 86 L.Ed. 1776; Adwood Corp. v. Commissioner, 6 Cir., 200 F.2d 552, certiorari denied, 346 U.S. 818, 74 S.Ct. 30; Harbor Building Trust v. Commissioner, 16 T.C. 1321.

This transaction clearly would have been a reorganization within the meaning of Sections 112(b)(10) and 113(a)(22) but for one fact, which is that the property was not acquired by the committee or the new corporation from the Delaware corporation. The property whose basis is in controversy here was acquired from the Bankhead Holding Company. The sheriff's sales stripped the Delaware corporation of its possession, its equity of redemption, and every vestige of the title, of the hotel properties. Over four years later, the holding company filed its petition in bankruptcy under Section 77B. The filing of the petition was not even authorized by the bankrupt's stockholders until December 12, 1934. The prior operation by the new owner under the supervision of the trustee was a consensual proceeding in pais. It was not until the institution of the bankruptcy proceeding that the bondholders took effective command over the disposition of the property. 315 U.S. 183–184, 62 S.Ct. 540. The stockholders of the Delaware corporation were entirely eliminated by the execution sales, retaining no portion whatever of their proprietary interest.

There must be a continuity of proprietary interests from the old corporation to the new; but where the old corporation is insolvent and the creditors institute proceedings to enforce their rights against it within the full priority rule of Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; so as to have effective command over its properties, exclude the old stockholders, and occupy the position of equity owners; and when these creditors of the old corporation become stockholders of the new corporation, which acquires the assets of the old, the requisite continuity of proprietary interests exists, and the transferee in reorganization proceedings is entitled to use for tax purposes the basis of its transferor or corporate predecessor in bankruptcy under Section 77B.

In the instant case, no substantial number of creditors of the old corporation undertook to do this prior to the time of bankruptcy. Prior thereto the legal proceedings were in behalf of the unsecured creditors, who did not come within the priority rule of the Boyd case and who were only three or four in number. When bankruptcy intervened, the old stockholders had been frozen out; a new corporation had possession of the property and title to the equity of re-

demption therein. The unsecured creditors had exchanged their unsecured debts for stock in the new corporation, which at that time had not assumed the bonded indebtedness. The procedural legal devices that were utilized here prior to bankruptcy were in behalf of the few unsecured creditors. No bondholders protective committee took title to the property. The Bankhead Holding Company was created for the protection of unsecured debts, which had been reduced to judgment. The bankruptcy court had jurisdiction in rem of the property because, at the time of bankruptcy, it was in the possession of the voluntary bankrupt-debtor, which held the equity of redemption, and was operating the hotel under the supervision of the trustee. The petition for reorganization listed the bonds and some local taxes as the debtor's only liabilities. There was no privity between the holding company and the Delaware corporation, simply an acquisition of the latter's property by the former at a public sale. The Delaware corporation became only a memory, a fictitious legal entity; it retained only the record of its investments, its gains and losses; no one needed that in 1930 to 1936.

Accordingly, the appellee must use the basis of the holding company, which is different from that of the Delaware corporation; the correct computation shall be made by the district court on remand. Reversed and remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed.

HUTCHESON, Chief Judge (dissenting).

I am of the clear opinion that the facts of this case are in substance the same as those in Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, and that the principles laid down and applied in the series of cases decided by the Supreme Court in its October term, 1941,[1] require the affirmance instead of the reversal of the district court's opinion and decision.

As clearly and correctly pointed out in the opinion of the district court, the controlling, the determining question in this case is whether there is present here the one decisive fact which, present in the Bondholders' case, differentiated it from the Limestone case, and required a different decision. In the Bondholders' case, the Supreme Court stated [315 U.S. 189, 62 S.Ct. 539]:

"For the reasons stated in Helvering v. Alabama Asphaltic Limestone Co., supra, this transaction clearly would have been a 'reorganization' within the meaning of § 112 (i)(1) but for one fact. That fact is that the property was not acquired by the committee or the new corporation from Marlborough Investment Co. In December, 1928, several years prior to the insolvency reorganization, Marlborough Investment Co., the issuer of the bonds, had transferred the property to another corporation. As a result of mesne conveyances the property was held in May, 1932 by State Developers, Inc. and one Cooley. While the foreclosure proceedings were pending that corporation and Cooley executed and delivered a quit claim deed to the property in consideration of the payment of the cash sum of $10,025, which was furnished by the committee.

"In view of these circumstances there was no 'reorganization' within the meaning of § 112(i)(1). * * *"

Since this "one fact", "these circumstances," detailed above and relied on for differentiating the Bondholders' case from the Limestone case, cannot be

1. Helvering v. Alabama Asphaltic Limestone Co., supra; Palm Springs Holding Corp. v. Commissioner, 315 U.S. 185, 62 S.Ct. 544; Bondholders Committee v. Commissioner, 315 U.S. 189, 62 S.Ct. 537.

found in this record, search it as one will, I am constrained to hold that "for the reasons stated in Helvering v. Alabama Asphaltic Limestone Co., supra, this transaction clearly" is "a 'reorganization' within the meaning of § 112(i)(1)".

I respectfully dissent.