GOLDSTEIN BROTHERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50985. Filed March 22, 1955.

*Sol Goodman, Esq.*, and *M. S. Cassen, Esq.*, for the petitioner.
*John L. Carey, Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* The respondent determined deficiencies in excess profits tax for the calendar years 1943 to 1945 in the respective amounts of $17,743.06, $14,896.21, and $21,911.18.

The petitioner attacks as erroneous the respondent's reduction of the excess profits tax credit claimed upon the petitioner's excess profits tax returns for those years. The issue is whether the petitioner is entitled to use the basis of its assets in the hands of a former owner in computing its excess profits credit under the invested capital method.

The facts are stipulated and are so found. The petitioner filed its tax returns with the collector of internal revenue at Indianapolis.

Goldstein Brothers, a partnership, operated a retail home furnishings business prior to May 1, 1923. On that date Goldstein Bros., Inc., herein referred to as the old corporation, was organized under the laws of Indiana. The stockholders were the members of the partnership and held the original stock in the same proportions as their interests in the partnership. The net assets of the partnership on that date amounted to $434,612.49. The closing balance sheet of the partnership was used as the opening balance sheet of the old corporation

except that good will was set up on the books at a value of $280,000 and the outstanding issued capital stock amounted to $714,612.49. 1,400 shares of stock of no par value were issued in exchange for the assets of the partnership. On April 14, 1932, 335 shares of preferred stock of $100 par value were issued.

On January 31, 1934, the old corporation filed a voluntary petition in bankruptcy.

In February 1934 the petitioner was organized under the name of Washington and Delaware Mercantile Company, with an authorized capital of 335 shares of preferred stock of $100 par value and 500 shares of common stock of no par value. The paid-in capital amounted to $33,500. The common stock was issued on December 31, 1935, to the former stockholders of the old corporation in the same proportions as their holdings in that corporation. This transaction was recorded on the petitioner's books as a debit to goodwill and credit to capital stock in the amount of $20,500.

On February 26, 1934, the assets of the old corporation were sold at public auction by the trustee in bankruptcy to the petitioner for $48,025, which sale was approved by the referee in bankruptcy.

The final report of the trustee in bankruptcy shows as follows:

| | | |
|---|---:|---:|
| Receipts of trustee | $60,112.62 | |
| Expenses of receiver corporation | 1,844.87 | $58,267.75 |
| | | |
| Disbursements: | | |
| 1st dividend | 16,895.98 | |
| Taxes | 2,616.73 | |
| Wages | 654.98 | |
| Administrative expenses, legal fees, receiver fees, etc. | 10,131.02 | 30,298.71 |
| | | |
| Balance for second and final dividend | | 27,696.04 |
| Total claims of general creditors | | 84,474.88 |

In August 1934 the petitioner's name was changed to Goldstein Bros., Inc. The authorized preferred stock was increased at that time and again in 1936.

In its excess profits tax returns for 1943, 1944, and 1945 the petitioner computed its excess profits tax credit by the invested capital method and used as the basis of the assets acquired at the public auction the basis of those assets in the hands of the old corporation. In the 1943 return the computation was based upon $434,612.49 paid in for 1,400 shares of stock in the old corporation, plus $33,500 paid for 335 shares of preferred stock. In determining the deficiencies the respondent took as the basis the cost to the petitioner at the sale, reducing the basis accordingly, and resulting in a smaller excess profits credit.

The parties agree that the issue is whether there was a reorganization within the meaning of section 112 (b) (10),[1] Internal Revenue Code of 1939, so as to entitle the petitioner to use the basis of the assets in the hands of the old corporation in computing its excess profits credit. Section 113 (a) (22)[2] provides in general that if the property is acquired by a corporation upon a transfer to which section 112 (b) (10) is applicable, the basis in the hands of the acquiring corporation shall be the same as it would be to the former corporation.

We accept the petitioner's contention that its stockholders intended the issuance of the 500 shares of common stock to be as of February 26, 1934, although the records show actual issuance occurred December 31, 1935.

Nevertheless, it is obvious that under the stipulated facts the requirements of section 112 (b) (10) have not been met. The statute requires that the transfer of property be pursuant to a plan of reorganization approved by the court and that it be made solely for stock or securities in the acquiring corporation. Here the assets of the old corporation were transferred, not in exchange for stock or securities. of the petitioner, but for cash. The petitioner bid in the assets of the old corporation at the bankruptcy sale for $48,025 to be paid in cash.

Furthermore, the court having jurisdiction in the bankruptcy proceeding did not approve any plan of reorganization. The court ap-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(10) GAIN OR LOSS NOT RECOGNIZED ON REORGANIZATION OF CORPORATIONS IN CERTAIN RECEIVERSHIP AND BANKRUPTCY PROCEEDINGS.—No gain or loss shall be recognized if property of a corporation \* \* \* is transferred, in a taxable year of such corporation beginning after December 31, 1933 in pursuance of an order of the court having jurisdiction of such corporation—

(A) in a receivership, foreclosure, or similar proceeding, or

(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended,

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

(22) PROPERTY ACQUIRED ON REORGANIZATION OF CERTAIN CORPORATIONS.—If the property was acquired by a corporation upon a transfer to which section 112 (b) (10), or so much of section 112 (d) or (e) as relates to section 112 (b) (10), is applicable, then, notwithstanding the provisions of section 270 of the National Bankruptcy Act, as amended, the basis in the hands of the acquiring corporation shall be the same as it would be in the hands of the corporation whose property was so acquired, increased in the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred, and such basis shall not be adjusted under subsection (b) (3) by reason of a discharge of indebtedness pursuant to the plan of reorganization under which such transfer was made.

proved the sale to the highest bidder of the assets of the bankrupt. This does not amount to the approval of a plan of reorganization.

The petitioner relies upon *Pebble Springs Distilling Co.*, 23 T. C. 196. That case did not involve a bankruptcy or insolvency court proceeding, but a sale upon liquidation, to which provisions of law other than section 112 (b) (10) applied. There was an exchange of stock for stock within the scope of section 112 (b) (3) and a transfer by one corporation to another held to be a reorganization within the definition in section 112 (g) (1) (D).[3] These provisions of law do not apply here where bankruptcy proceedings are involved, where cash was paid for property, and where the same definition of the term "reorganization" is not applicable. Subsection (g) provides that the definition of reorganization therein does not apply in section 112 (b) (10) or in section 113 (a) (22). Hence the definition of reorganization in section 112 (g) (1) (D) is not applicable here, and this transaction was not a reorganization for purposes of section 112 (b) (10). The applicable regulation, Regulations 111, section 29.112 (b) (10)–1, provides, in part:

As used in section 112 (b) (10), the term "reorganization" is not controlled by the definition of "reorganization" contained in section 112 (g). However, certain basic requirements, implicit in the statute, which are essential to a reorganization under section 112 (g), are likewise essential to qualify a transaction as a reorganization under section 112 (b) (10). Among these requirements are a continuity of the business enterprise under the modified corporate form and a continuity of interest therein on the part of those persons who were the owners of the enterprise prior to the reorganization. Thus, the nonrecognition accorded by section 112 (b) (10) applies only to a genuine reorganization as distinguished from a liquidation and sale of property to either new or old interests supplying new capital and discharging the obligations of the old corporation. * * *

The petitioner argues that the reorganization provisions of the Internal Revenue Code of 1939 should be construed as applicable here to permit the use of the old corporation's basis for these assets. It seems clear that the Congress did not intend that such reorganization provisions be applied in this factual situation. In *Mascot Stove Co.* v. *Commissioner*, (C. A. 6, 1941) 120 F. 2d 153, certiorari denied 315 U. S. 802 (1942), the stockholders of a bankrupt corporation entered into a plan to purchase the assets from the trustee for cash to be paid to the general creditors and assumption of the secured debts by a new corporation formed by the same stockholders holding stock in the same proportions as in the old. It was there held that the transaction

---

[3] SEC. 112. (g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (l)) and in section 113 (other than subsection (a) (22)).—

(1) The term "reorganization" means * * * (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, * * *

was not a reorganization within the meaning of section 112 (b) (3) and (g) (1) of the Revenue Act of 1934, since the transferor corporation received nothing from the transferee and the interest of the stockholders of the new corporation was not acquired in exchange for, or by virtue of their ownership in, their stock in the old. A similar result was reached in *Templeton's Jewelers* v. *United States*, (C. A. 6, 1942) 126 F. 2d 251; and *D. W. Klein Co.* v. *Commissioner*, (C. A. 7, 1941) 123 F. 2d 871, certiorari denied 315 U. S. 819 (1942).

Subsequent to these decisions section 121 (a) of the Revenue Act of 1943 amended section 112 (b) of the Code by adding paragraph (10). The intent of this section is explained in House Report No. 1079, 78th Congress, 2d Session (1944 C. B. 1059, at p. 1063), in part:

It is intended, however, that only an actual reorganization of a corporation will be covered as distinguished from a liquidation in a bankruptcy proceeding and sale of property to either new or old interests supplying new capital and discharging the obligations of the old corporation. In other words, the type of transaction which was held not to be a reorganization under section 112 (g) (1) in the Mascot Stove Co. case (120 Fed. (2d), 153) or in Templeton Jewelers Inc. case (126 Fed. (2d), 251) would likewise not be covered under these amendments.

The legislative intent, therefore, appears to be that the enactment of section 112 (b) (10) was not a legislative reversal of the *Mascot Stove* and *Templeton's Jewelers* cases. These decisions are applicable in the present case and in other similar situations.

The petitioner says that it was a successor in interest of the old corporation because its stockholders were the same and contends that if the stockholders of the former corporation became the stockholders of the successor there is the continuity of interest required to entitle the successor to use the basis of the former corporation, citing *New Jersey Mortgage & Title Co.*, 3 T. C. 1277 (1944), and other cases.

In the cited case the stockholders had some equity remaining in the old corporation. The property was transferred to the new company in exchange for stock and the obligations of the old were assumed by the new in a modified form. In such situations the stockholders of the old company have a continuing interest in the new. A different situation exists where the creditors have come into control and the stockholders of the old corporation have no further equity in the property. In *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179 (1942), the bondholders of the old corporation became stockholders in the successor and the stockholders of the old corporation were eliminated. That was held to be a reorganization, the continuing interest being that of the bondholders. In the present case the report of the trustee shows that dividends of $16,895.98 and $27,696.04 were paid on creditors' claims amounting to $84,474.88. The creditors were not paid in full, and their interests were not taken into account in the organization of the petitioner. Hence there was no continuity of

interest between the beneficial owners of the assets of the old corporation (the creditors) and the stockholders of the petitioner. The petitioner's stockholders had no remaining equity in the assets of the old corporation, and bought the assets for cash. They are in no better a position than a stranger supplying new capital, as in the case of *Chicago Stadium Corporation*, 13 T. C. 889. See also *Helvering* v. *Cement Investors, Inc.*, 316 U. S. 527 (1942), and *Standard Coal, Inc.*, 20 T. C. 208 (1953).

In *Detroit-Michigan Stove Co.* v. *United States*, 121 F. Supp. 892 (1954), the Court of Claims said:

Where the stockholders of the old corporation continue to be represented in substantial measure in the affairs of the new one, those stockholders must have something of substantial value, which the old stockholders in this case did not have, to exchange for their stock in the new corporation in order for the transaction to come within the meaning of section 112 (b) (10). * * *

\* \* \* \* \* \* \*

Where the proprietary interest of the stockholders has completely disappeared by reason of the insolvency, in the bankruptcy sense, of the debtor corporation, which was clearly the situation in this case, the acquisition of the assets by the stockholders or their new corporation does not constitute a reorganization.

This language is appropriate here. The petitioner is not entitled to use the basis of the old corporation.

*Decision will be entered for the respondent.*