WESTERN MASSACHUSETTS THEATRES, INC., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44020.   Filed June 8, 1955.

*William Shelmerdine, Jr., Esq.*, for the petitioner.
*Joseph Landis, Esq.*, for the respondent.

338

OPINION.

VAN FOSSAN, *Judge:* The sole question here presented involves the basis properly to be ascribed to the G. B. properties in the hands of petitioner for depreciation and invested capital purposes. Specifically, the parties are at issue with respect to whether the transaction by which such properties were acquired was one to which the non-recognition provisions of section 112 (b) (10) of the Internal Revenue Code of 1939 [4] apply so as to make petitioner's basis therefor the same as it would be in the hands of Olympia pursuant to section 113 (a) (22) of the 1939 Code.[5]

In 1933, Olympia was in receivership. The holders of certain bonds secured by a mortgage on that part of Olympia's assets, which for our purposes we have called the G. B. properties, instituted foreclosure proceedings. A bondholders' protective committee was formed and thereafter presented for the court's approval a plan calling for the creation of petitioner for the purpose of acquiring the G. B. properties from the committee after they had been bid in by it at the foreclosure sale. The plan as submitted contained one alternative which provided for the issuance of petitioner's new 6 per cent bonds to the holders of the old 6½ per cent bonds in exchange therefor. Another alternative provided for a certain cash payment to bondholders so electing. At the time of the plan's submission, the

---

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.
  (b) EXCHANGES SOLELY IN KIND.—

  \*       \*       \*       \*       \*       \*       \*

  (10) GAIN OR LOSS NOT RECOGNIZED ON REORGANIZATION OF CORPORATIONS IN CERTAIN RECEIVERSHIP AND BANKRUPTCY PROCEEDINGS.—No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

    (A) in a receivership, foreclosure, or similar proceeding, or

[5] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.
  (a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

  \*       \*       \*       \*       \*       \*       \*

  (22) PROPERTY ACQUIRED ON REORGANIZATION OF CERTAIN CORPORATIONS.—If the property was acquired by a corporation upon a transfer to which section 112 (b) (10), or so much of section 112 (d) or (e) as relates to section 112 (b) (10), is applicable, then, notwithstanding the provisions of section 270 of the National Bankruptcy Act, as amended, the basis in the hands of the acquiring corporation shall be the same as it would be in the hands of the corporation whose property was so acquired, increased in the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred, and such basis shall not be adjusted under subsection (b) (3) by reason of a discharge of indebtedness pursuant to the plan of reorganization under which such transfer was made.

Goldsteins owned approximately 34 per cent of the G. B. bonds and Lares 2.02 per cent. However, the plan contemplated further acquisition thereof by the Goldsteins. Thus, when the plan was actually consummated, the latter's holding thereof had increased to approximately 65 per cent. In accordance with the plan, the entire issue of petitioner's Class A and B stocks was distributed to the Goldstein's, the Class B thereafter to be sold to Lares. For each of the years involved, petitioner claimed depreciation on the buildings included in the G. B. properties computed on the basis of the adjusted basis thereof in the hands of Olympia. Respondent's disallowance of portions of the amounts so claimed by petitioner stems from his determination that the transaction in which the G. B. properties were acquired was not one from which no gain or loss would be recognized under the statute involved.

Petitioner first urges that the transaction in dispute met every literal requirement of the statute—that the properties were transferred to petitioner in a taxable year of Olympia beginning after December 31, 1933, that such transfer was pursuant to the order of the court having jurisdiction in the premises; that petitioner was organized and made use of to effectuate a plan of reorganization approved by such court; and that the transfer was in exchange solely for stock or securities. Petitioner also maintains that the words "property" and "reorganization" as respectively used in section 112 (b) (10) do not require the transfer of all or substantially all of the properties of Olympia. However, it has long been recognized that literal compliance alone is insufficient to qualify a transaction as a reorganization within the scope of the various statutory provisions. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, affirming 21 B. T. A. 425; *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179. In addition there must be compliance with the intent and purpose underlying the reorganization statutes. *Bazley* v. *Commissioner*, 331 U. S. 737. Thus, although the term "reorganization" as used in section 112 (b) (10) is specifically excluded from the definition thereof contained in section 112 (g), it, nevertheless, as a prerequisite to its application, contemplated a continuity of the business enterprise in a modified corporate form and a continuity of interest by the owners thereof prior to consummation of the plan. *Chicago Stadium Corporation*, 13 T. C. 889; *Davis* v. *Bankhead Hotel, Inc.*, 212 F. 2d 697. See also S. Rept. No. 627, 78th Cong., 1st Sess., p. 4953; Regs. 111, sec. 29.12 (b) (10)-1. That is to say, substantially the same business is to be continued in a new form by substantially the same proprietary interests. Cf. *Scofield* v. *San Antonio Transit Co.*, (C. A. 5) 219 F. 2d 149).

Petitioner points to the fact that its entire stock, 100 per cent thereof, was actually issued to Lares and the Goldsteins and held by them

following the transaction in question. In this regard, petitioner argues that it makes no difference in what capacity they received the stock.

True it is that for the purpose of mathematically computing the percentage of stock held by the former owners of the equity interest in the old corporation to ascertain compliance with the '80 per cent control provision of the Code, the capacity in which such stock was received is irrelevant. *Commissioner* v. *Huntzinger*, 137 F. 2d 128; *Prairie Du Chien-Marquette Bridge Co.* v. *Commissioner*, 142 F. 2d 624; *Seiberling Rubber Co.* v. *Commissioner*, 169 F. 2d 595. But, the continuity of interest factor required by the reorganization statutes has generally been held to mean that the transferor corporation or the owners of proprietary interest therein receive a proprietary interest in the new or transferee corporation by reason of, and in exchange for, their interest in the transferor. *Mascot Stove Co.* v. *Commissioner*, 120 F. 2d 153; *Goldstein Brothers, Inc.*, 23 T. C. 1047. Such was not the case here. The record is silent as to just what was given by the Goldsteins and Lares in exchange for the issuance to them of the entire stock of petitioner. One point, however, is eminently clear. Neither received such stock interest in exchange for a prior proprietary interest in the property involved. For aught that appears, the stock may have been issued thereto in consideration of new capital furnished by them. *Chicago Stadium Corporation, supra; Helvering* v. *Cement Investors, Inc.*, 316 U. S. 527; *Standard Coal, Inc.*, 20 T. C. 208. Furthermore, 33 per cent of the former bondholders received no continuing proprietary interest in petitioner in any capacity.

After considering all the facts apppearing on this record, we have concluded that respondent did not err in his determination. He therefore is sustained.

*Decision will be entered under Rule 50.*